75  371
175s 115

## Queen Insurance Company v. Dearborn Savings, Loan and Building Ass'n.

1. INSURANCE—*A Clause Making Loss Payable to a Mortgagee Held to Constitute a New Contract.*—When a mortgage clause like the one involved in this case is attached to a policy of insurance, it operates to create a new and distinct contract between the underwriter and the mortgagee, and after such clause is attached there are two contracts of insurance in force by reason thereof, and by reason of the policy, one of which is a contract between the underwriter and the insured, and the other between the underwriter and the mortgagee, and these two contracts may be very different in their provisions, dependent upon the terms of the policy and the clause added.

2. SAME—*Certain Conditions of a Policy Held Not to be Part of a Contract with a Mortgagee, Under a Clause Attached to the Policy.*—An insurance policy contained a clause stating that "the conditions hereinbefore contained shall apply" to any interest under this policy which may exist at any time in favor of a mortgagee. Provisions as to proof of loss and as to bringing suit within twelve months followed such clause. Attached to the policy was a slip making a loss under the policy payable to a mortgagee. *Held*, that the underwriter, by its form of contract, elected that said provisions should not apply to the mortgagee's contract, and that they were no part of the same, and not binding on the mortgagee.

372    APPELLATE COURTS OF ILLINOIS.

VOL. 75.] Queen Ins. Co. v. Dearborn Savings, Loan & Bldg. Ass'n.

Assumpsit, on an insurance policy. Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in this court at the March term, 1898. Affirmed. Opinion filed April 18, 1898.

## STATEMENT OF THE CASE.

This case presents the question of the construction of a policy of insurance, attached to which is a clause making the loss under the policy payable to a mortgagee.

On October 6, 1892, appellant issued its policy, insuring Ellie L. Graham on certain property for a period of three years, and to an amount not to exceed $1,400.

Attached to the policy was a slip containing the following provisions:

"Loss, if any, payable to Dearborn Savings, Loan and Building Association, mortgagee or trustee, as hereinafter provided:.

"It being hereby understood and agreed, that this insurance, as to the interest of the mortgagee or trustee only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the property insured, nor by the occupation of the premises for purposes more hazardous than are permitted by the terms of this policy.

"Provided, that in case the mortgagor or owner neglects or refuses to pay any premium due under this policy, then, on demand, the mortgagee or trustee shall pay the same. Provided, also, that the mortgagee or trustee shall notify this company of any change of ownership or increase of hazard which shall come to his or their knowledge, and shall have permission for such change of ownership or increase of hazard duly indorsed on this policy. And provided, further, that every increase of hazard, not permitted by this policy to the mortgagor or owner, shall be paid for by the mortgagee or trustee on reasonable demand, and after made by this company upon, and refusal by, the mortgagor or owner to pay, according to the established schedule of rates. It is, however, understood that this company reserves the right to cancel this policy, as stipulated in the printed conditions in said policy; and also to cancel this agreement on

giving ten days' notice of their intention to the trustee or mortgagee named herein, and from and after the expiration of the said ten days this agreement shall be null and void. It is further agreed that in case of any other insurance upon the property hereby insured, then this company shall not be liable under this policy for a greater proportion of any loss sustained than the sum hereby insured bears to the whole amount of insurance on said property, issued to or held by any party or parties having an insurable interest therein. It is also agreed that whenever this company shall pay the mortgagee or trustee any sum for loss under this policy, and shall claim that as to the mortgagor or owner, no liability therefor exists, it shall at once and to the extent of such payment, be legally subrogated to all the rights of the party to whom such payments shall be made, under any and all securities held by such party for the payment of said debt. But such subrogation shall be in subordination to the claim of said party for the balance of the debt so secured. Or said company may, at its option, pay the said mortgagee or trustee the whole debt so secured, with all the interest which may have accrued thereon to the date of such payment, and shall thereupon receive from the party to whom such payment shall be made, an assignment and transfer of said debt, with all securities held by said parties for the payment·thereof.

QUEEN INSURANCE COMPANY,

A. R. EDWARDS, City Manager.

"To attach to policy No. 266,295."

The premises were entirely destroyed by fire during the month of November, 1893. On February 20, 1895, suit was brought in the name of Ellie L. Graham for the use of appellee, and on April 13, 1896, the title was amended and an amended declaration filed, making appellee the actual plaintiff. The amended declaration alleges the making of the policy and the mortgagee clause and the total destruction of the property while the policy was in full force and effect, and states that forthwith, after learning of the happening of the loss on October 25, 1894, appellee gave notice

374    APPELLATE COURTS OF ILLINOIS.

VOL. 75.] Queen Ins. Co. v. Dearborn Savings, Loan & Bldg. Ass'n.

to the defendant, and afterward, on December 8, 1894, it demanded payment of $1,400.

The defendant filed special pleas, presenting the following defenses :

1. Action was not commenced within twelve months next after the date of the fire. The failure to bring said action was not due to any act or neglect of Ellie L. Graham, the insured, but was due to the neglect of the Dearborn Savings, Loan and Building Association, the plaintiff.

2. The action was not commenced within twelve months next after the date of the fire, to wit, within twelve months next after November 19, 1893, as provided by the policy of insurance.

3. Neither Ellie L. Graham, the insured, nor the Dearborn Savings, Loan and Building Association, within sixty days after the date of the fire, to wit, within sixty days after November 19, 1893, rendered to the defendant a statement, signed and sworn to by the insured, stating the facts with reference to the loss, as in and by said policy of insurance is provided.

The court sustained a demurrer to these special pleas.

The case was tried without a jury, on the declaration as above stated, and the general issue. Appellee offered in evidence the policy of insurance with the mortgagee clause annexed; a bond from one Edward T. Chomer, and his wife, to appellee, dated October 15, 1889, and a trust deed of even date, securing said bond and conveying the premises insured; a deed from Edward T. Chomer and wife to Ellie L. Graham for the insured premises, reciting that the conveyance is subject to an incumbrance of $1,050 and interest.

A witness was called who, over objection, was permitted to testify that at the date of the fire the interest of appellee in the insured premises was more than $2,000.

The evidence of appellee showed that the fire occurred during November, 1893; that by a mistake in the books kept by the appellee the building insured had been confused with another building situated near it, so that, in inspecting the property on which it had placed loans, appellee did

not discover that the building covered by this particular loan and by the policy of insurance had been destroyed. This mistake was discovered during October, 1894, or within a year after the date of the fire. Upon discovering that the building had been destroyed, appellee's secretary went to see an insurance agent who he thought had procured the policy, but was told by this agent that she had not obtained the policy. Nothing more was done until December 11, 1894, when the secretary went to appellant's general manager and told him that they wanted to file their proofs of loss. The general manager declined to discuss the matter with him. No proofs of loss were produced.

Appellant moved the court to find in its favor at the close of appellee's case, and upon the overruling of the motion, by appropriate propositions of law, requested the court to hold that appellee had not complied with the provisions of the policy with reference to furnishing proofs of loss within the required time; that the suit could not be maintained because not brought within the time limited by the policy; that the failure to so bring suit was due to appellee's own neglect, and that, in any event, interest could not be recovered.

The court refused to hold the propositions of law requested, and entered judgment for the full amount of the policy, and allowed interest. Exceptions are preserved to the rulings and orders of the court.

Tenney, McConnell, Coffeen & Harding, attorneys for appellant.

A. B. Jenks, attorney for appellee.

Mr. Justice Sears delivered the opinion of the Court.
The following questions are presented upon this appeal:
1st. Did the provision of the policy, limiting the time within which suit might be brought, operate to bar this suit of appellee, who was the mortgagee, to whom the loss specified in the policy is made payable?

376    APPELLATE COURTS OF ILLINOIS.

VOL. 75.] Queen Ins. Co. v. Dearborn Savings, Loan & Bldg. Ass'n.

2d.   Did the failure of appellee and Ellie L. Graham to make proofs of loss, required by certain terms of the policy, preclude appellee from maintaining its suit?

3d.   Was the proof of appellee's interest sufficient?

4th.   Was the allowing of interest improper in the assessment of damages?

The policy provides, beginning with line seventy, that the insured, " within sixty days after the fire, etc., shall render a statement to this company, signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire, the interest of the insured, etc., in the property, the cash value of each item thereof, and the amount of loss thereon," etc.   It also provides, beginning with line 106, " No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months next after the fire."

It is undisputed that no proofs of loss were made by the insured, Graham, as above provided, or by appellee.   And it is apparent that this suit was begun after the expiration of twelve months from the date of the fire.   If, therefore, the above provisions are a part of the contract of insurance between appellant and appellee, just as they are part of the contract between appellant and Graham, then the suit of appellee can not be maintained.   The doctrine is well established by the decisions of this State, that when a mortgage clause, like the one here, is attached to a policy of insurance, it operates to create a new and distinct contract between the underwriter and the mortgagee.   After such clause is attached there are two contracts of insurance in force by reason thereof and by reason of the policy; one of which is a contract between the underwriter and the insured, and the other is between the underwriter and the mortgagee.   And these two contracts may be very different in their provisions, dependent upon the terms of the policy and the clause added. Hartford Fire Ins. Co. v. Olcott, 97 Ill. 439; Traders Ins. Co. v. Race, 142 Ill. 338; Hastings v. Westchester Fire Ins. Co., 73 N. Y. 141.

We have, then, to determine whether the two provisions in question, *i. e.*, providing for proofs of loss and requiring suit to be brought within one year from date of fire, are operative alike in both the contract with Graham, the insured, and the contract with appellee, the mortgagee, or are limited in their application to the contract with the former. We find in the policy, appearing before either of these two provisions in question, beginning at line fifty-six, the following: " If, with the consent of this company, an interest under this policy shall exist in favor of a mortgagee or of any person or corporation having an interest in the subject of insurance other than the interest of the insured, as described herein, the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached or appended thereto."

It seems clear that it was the intent of the underwriter who prepared the form of this contract to include some of the provisions thereinbefore set out, but there is no intimation that it was intended to include any of the provisions following thereafter. By exclusion they are left out when the ones preceding are specified. Hammerquist v. Swensson, 44 Ill. App. 627; Stettauer v. Hamlin, 97 Ill. 312; 2 Parsons on Cont., (6th Ed.), 515.

As against this construction, appellant relies upon Eddy v. London Assurance Co., 143 N. Y. 311; American Bldg. & Loan Ass'n v. Farmers Ins. Co., 40 Pac. Rep. 125.

The effect of these decisions is to hold that, while there results from the mortgage clause a new and distinct contract, different from that between underwriter and insured, yet it results not alone from the mortgage clause itself, but from it and the policy taken together; that the mortgage clause is not in itself a complete contract; and that the general provisions of the policy which are not inconsistent with the mortgage clause, are not abrogated or affected by it.

If no such provision as the one above quoted, beginning at line fifty-six, were contained in the policy, the contention of counsel for appellant might be sustained; but upon con-

378    Appellate Courts of Illinois.

Vol. 75.] Queen Ins. Co. v. Dearborn Savings, Loan & Bldg. Ass'n.

sideration of this provision, we think it can not be.   It is true that the mortgage clause does not alone constitute the contract between underwriter and mortgagee, and that some of the provisions of the policy must be taken with the mortgage clause to constitute a complete contract.   If there were no specific provision in the policy as to which parts of the policy should be so taken as part of the contract with the mortgagee, it might follow that all parts not inconsistent with the mortgage clause, should be so included.   But we have here the provision, at line fifty-six, which defines precisely what parts of the policy shall be applicable to the contract with the mortgagee.   The parts so indicated are enough of the policy to make a complete contract, and by exclusion no other parts should be considered as included.

Both the provision as to bringing suit within twelve months, and the requirement of proofs of loss, follow the provision at line fifty-six, and are not included by the expression " the conditions hereinbefore contained."   We hold, therefore, that the underwriter by its form of contract elected that these provisions should not apply to the mortgagee's contract, and that they are no part of the same, and not binding upon the mortgagee.   In no one of the cases cited is a provision similar to the one at line fifty-six construed or considered.   It is urged that the interest of appellee is not established by sufficient and competent evidence.   The bond, evidencing the debt of the grantor of the insured, Graham, and secured by the mortgage or trust deed in question, was introduced in evidence.   The bond is for $1,500 and interest at eight per centum per annum.   It is recited in the deed from Chomer to the insured, Graham, that the incumbrance amounts to $1,050 " and interest."   If no interest were due at the date of this deed, viz., March 15, 1890, nevertheless the principal due with interest at eight per centum to the time of finding would amount to more than the sum due upon the policy of insurance.   No attempt was made by appellant to show that any part of the debt evidenced by the bond, either principal or interest, had been paid.

Comstock, the secretary of appellee, testified that the

interest of appellee was "in excess of the face of the policy, and at the time we made the demand it was $2,000," and had never since been less. This testimony was not necessary in the absence of any showing that the debt evidenced by the bond had been paid; and if, in form, subject to criticism, as giving a conclusion of the witness rather than the result of his computation, it was at least not harmful to appellant. Munson v. Farwell, 16 Ill. App. 365, which was a recovery for money paid, laid out and expended, and Hollst v. Bruse, 69 Ill. App. 48, which was a suit for goods sold, are not in point.

The remaining question is as to the allowing of interest.

One of the provisions of the policy, beginning at line three, is, that "the sum for which this company is liable, pursuant to this policy, shall be payable sixty days after due notice, ascertainment, estimate, and satisfactory proof of the loss have been received by the company," etc. The ascertainment and estimate referred to are provided for at line two, and are to be made by the insured and appellant, or, if they differ, by appraisers. The neglect of the insured to act in this behalf is expressly excluded as affecting the interest of appellee by the terms of the mortgage clause, which provide: "It being hereby understood and agreed that this insurance, as to the interest of the mortgagee or trustee only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the property insured," etc.

The finding and judgment of the trial court was for $1,562. Of this $162 was allowed as interest. Whether the interest be computed from the date of the loss, or from the date of the offer by appellee to make proofs of loss, it is in either case not excessive. The judgment is affirmed.