STATE v. B. K. SALVERSON.[1]

June 27, 1902.

Nos. 13,075—(17).

**Grand Larceny—Evidence.**

In a criminal prosecution of a bank cashier on the charge of grand larceny in the first degree, based upon his alleged wrongful and unlawful appropriation of the sum of $925, funds of the bank, the evidence is examined, and *held* sufficient to sustain a conviction.

**Books of Account.**

State v. Clements, 82 Minn. 434, holding in effect that, where books of account material to an issue on trial, are properly received in evidence, and before the court and parties subject to inspection, and requiring an examination for details of information contained therein, it is proper to receive balances and summaries thereof from an expert witness, who has made the same, followed and applied.

**Written Instrument—Parol Evidence.**

Whether a sufficient foundation has been laid for the introduction of parol evidence of the existence and contents of a written document rests

[1] Reported in 91 N. W. 1.

in the sound discretion of the trial court, and its decision permitting such evidence is reviewable on appeal only in case of an abuse of discretion.

## Jury—Dispersion at Adjournment.

It was not reversible error in this case for the trial court, over defendant's objection, to permit the jury to separate for the period of four hours immediately after the taking of evidence had been concluded and before the case was argued and submitted to them by counsel, it appearing that the jury had been permitted to separate at other temporary adjournments of the court during the trial, and it not appearing that defendant was in any way injuriously affected thereby. The matter was within the discretion of the court.

## Intoxicating Liquor.

The use of intoxicating liquor by a juror while engaged in the trial of an action is highly reprehensible, and when his indulgence is to such an extent as to impair his faculties, and render him incapable of comprehending or appreciating the proceedings in court, or unfit him for an intelligent, fair, and impartial consideration of the case, when not participated in, assented to, or waived by the parties, constitutes such misconduct as vitiates and invalidates the verdict, unless it be made to appear clearly that no prejudice resulted therefrom.

## Intoxication of Juror.

The showing that a juror was intoxicated on the trial of an action to the extent above stated raises a presumption of prejudice, and the burden is upon the prevailing party to overcome and rebut it; but whether the presumption is overcome in any case is very largely a question for the trial court to determine, requiring a clear showing to justify a reversal by the supreme court.

## New Trial—Knowledge of Misconduct.

If the party against whom a verdict is returned be instrumental in causing the intoxication of the juror, or be aware of the fact before the verdict, and fails to bring it to the attention of the trial court, he waives the misconduct. An essential of an application for a new trial based upon this ground is an affirmative showing that the moving party had no notice of the misconduct before verdict.

## Same—Discretion of Court.

Whether a new trial should be granted for misconduct of a juror of this nature rests in the sound judicial discretion of the trial judge, and his determination thereof is not reviewable except in a clear case of abuse of discretion.

Assignments of Error.

> Various assignments of error considered, and *held* to present no reversible error.

Appeal by defendant from an order of the district court for Swift county, Qvale, J., denying a motion for a new trial. Affirmed.

*Jas. A. Peterson, John O. Haugland* and *C. L. Kane,* for appellant.

*W. B. Douglas,* Attorney General, and *F. P. Olney,* County Attorney, for the State.

BROWN, J.

Defendant was indicted, tried and convicted in the district court of Swift county of the crime of grand larceny in the first degree, and appeals from an order denying his motion for a new trial.

It appears from the record before us that defendant was the cashier of the Citizens' Bank of Appleton, this state, a corporation created for the purpose of doing a general banking business, with full charge and control of its affairs. On January 16, 1899, the bank was the owner of eighty acres of land, and defendant, as its cashier and representative, sold the same to one Avelsgaard, receiving in payment therefor a deed to the bank of forty acres of other land and Avelsgaard's promissory note for the sum of $925, payable to the bank. Defendant falsely entered this note and the transaction evidenced by it upon the books of the bank as a loan of the amount of money represented thereby, and the contention of the state is that he then wrongfully took from the funds of the bank that amount, and unlawfully appropriated it to his own use. The entry so made by defendant in the books was subsequently carried thereon as a loan, and was at no time corrected, or made to show the true conditions. A large number of errors are assigned; the greater proportion of which, however, require no special mention, and we shall refer to some of the main questions only.

1. Some time after Avelsgaard had made and delivered his note to the bank in payment for the land sold him by defendant, he paid the same, and it was returned to him. It was not produced at the trial, and the court admitted parol proof of its existence and contents; and of this defendant complains because, and for the

reason, as urged by his counsel, that no proper foundation was laid. Avelsgaard testified that he had made diligent search for the note; that he had looked carefully in all places at his home in which he kept papers of the kind, but was unable to find it. He further testified that he thought the note was still at his home somewhere; just where he could not tell. The examination touching this particular question was somewhat extended by both parties, the court finally ruling that a foundation was sufficiently laid, and admitted the testimony as to the contents of the note. The question whether a proper foundation was laid for the admission of this evidence was one resting very largely in the sound discretion of the trial court, and, it not appearing to have been abused, there was no error in the admission of the evidence. Phoenix Ins. Co. v. Taylor, 5 Minn. 393 (492); Molm v. Barton, 27 Minn. 530, 8 N. W. 765. And, moreover, when the defendant was called as a witness in his own behalf, he admitted the execution and delivery of the note, and undertook to explain his conduct in reference to it and the entries made in the books of the bank. So it became a conceded fact in the case that the note was given as claimed by the state, and its precise terms were not material upon any question in issue.

2. The books of the bank were offered in evidence, and Public Examiner Pope was permitted, over defendant's objection, to testify as a witness on the part of the state, the object and purpose of keeping such books, and that they were kept in accordance with regulations prescribed by him for all the banks of the state. He was also permitted to testify, as an expert, the result of his computations and summaries from the books, and that they did not disclose that the sum of $925, which defendant entered therein as a loan, and which appeared therefrom to have been taken from the funds of the bank, was ever returned. There was no error in the rulings of the court on this subject. It was said in State v. Clements, 82 Minn. 434, 85 N. W. 229,—a case involving a very similar question,—that where books of account, material to an issue on trial, are properly received in evidence, and being in court, open to inspection by all parties, and which require an examination for details of information contained therein, it is proper to receive balances or summaries from an expert witness, who has made the

same, upon proper foundation being laid. There is and can be no serious controversy in the case at bar but that the books were properly received in evidence. That they were the books of the bank is clear. They were turned over by defendant himself to the receiver of the bank as its books, and all the entries contained therein had exclusive reference to the business and affairs of the corporation.

Witness Pope was called as an expert, a proper foundation was laid, and he was shown to be fully ·qualified to testify concerning the subject in hand. He was permitted to testify that all of the transactions of the bank were entered in the books, and of this defendant complains. It is very usual on the part of banking corporations to enter all their business transactions in their books, though it is not clear that it was strictly proper to allow the witness to state that all those of this bank were so entered. He did not keep the books, and could speak only from his knowledge of the general custom in that particular. But, whether competent or not, the evidence on this subject in no way prejudiced defendant. No claim is made that all the transactions of the bank were not entered in the books, and the only entries which were material as affirmative evidence against defendant were made by himself. All the testimony of this witness was based upon what the books disclosed. He was asked what amount of money was taken from the assets of the bank on account of the Avelsgaard and one other note, and he answered $966, "according to the books." He did not, as contended by counsel, undertake to speak from personal knowledge. If his answer was inaccurate, the books were before the court, open to inspection, and he could have been corrected. It is quite true that the books should speak for themselves, but under the rule announced in the Clements case, which is in accord with the authorities generally, it was not error to permit the witness to testify therefrom in the respects complained of by the assignments of error covering this subject.

3. The· taking of testimony on the trial was concluded at about twelve o'clock noon, May 30,—Memorial Day. At this time an attorney not connected with the trial of the case requested the court to take a recess until four o'clock in the afternoon, to enable

the attorneys, and others in attendance at court, to take part in the public observance of the day. The usual time for the noon recess was from twelve to two o'clock, and the request was that it be extended two hours. To this counsel for defendant objected, and insisted that the trial be proceeded with at the usual hour; the objection being founded on the theory that, as the evidence had all been presented to the jury, it would be improper to permit them to separate before the final submission of the case. The court overruled the objection, and took a recess until four o'clock; but before doing so inquired of counsel for defendant whether they desired the jury kept together during the recess, and they replied that they had no request to make on that subject. It is now urged that the action of the trial court was very unfair, and operated prejudicially to the rights of the accused. We are unable to concur in this contention. The jurors had been permitted during the entire trial to separate during the temporary adjournments of the court, and were kept under no restraint whatever; and it is not fair to suppose or presume that their separation during the last day of the trial would be any more prejudicial to defendant than their separation on preceding days. The matter of adjournment of court to permit court officers and others to participate in the Memorial Day exercises was clearly within the discretion of the trial judge, and we find no reason for holding that it was abused. The inquiry of the court whether counsel for defendant desired the jury kept together during the recess was in no way prejudicial.

4. It is contended in behalf of defendant that the evidence is wholly insufficient to show defendant's guilt beyond a reasonable doubt, and that the verdict of the jury should be set aside, and a new trial granted.

As we have already stated, defendant was the cashier of the bank, in full charge and control of its affairs, including its books and records, and was alone responsible for the daily conduct of its business. He sold a tract of land belonging to the bank, receiving in part payment the Avelsgaard note for $925, which, instead of entering upon the books as an asset of the bank, he deliberately and intentionally recorded as a loan, thus representing that he had loaned that amount of money for the bank, when in truth and in

fact he had not. The inferences to be drawn from his conduct in this matter, including the entry made by him in the books, and all attending circumstances, were for the jury to draw. It is claimed that he indorsed the amount of this note upon another note held by the bank against a third person, the payment of which was secured by a chattel mortgage. Whether this indorsement was made at the time, and for what purpose, were questions of fact for the consideration of the jury, and not for the court. The evidence is amply sufficient to sustain the jury in finding that the funds of the bank were short at the close of business on the day of this transaction to the amount represented by the Avelsgaard note, and that the amount of the shortage was appropriated by defendant. The books were made by defendant to appear that the amount had been loaned, and the manifest deduction from them was that it had been taken from the bank's funds on that day.

It is urged that the bookkeeper employed at the bank as an assistant to defendant was not friendly disposed towards him, and the inference is sought to be drawn that he, and not the defendant, appropriated the money. But there is no claim that the books were manipulated to the prejudice of defendant. Reliance was made for conviction upon entries made by him, and not by the clerk, and the latter does not appear to have had anything to do with this transaction. A book kept mainly by the clerk, and designated by witnesses as the "teller's cash book," disclosed that there was a surplus in the hands of the bank at the close of business hours on the day in question to the amount of something like $2,700, and it is very strenuously contended by appellant's counsel that this fact is conclusive that no money at all was taken by defendant, or any other person, at that time. The jury were justified in finding from the evidence that this book was not one of the regular books kept by the bank, and that it was wholly inaccurate and unreliable; and they were justified in finding, too, that there was not, as a matter of fact, a surplus of funds as disclosed by that book. Defendant, as a witness in his own behalf, explicitly denied that he wrongfully or otherwise appropriated any money of the bank at this time; but whether he did or not was clearly a question for the jury to determine, and the result of our examination of the

evidence is that their verdict is sustained, and cannot be disturbed. The witnesses were before the trial judge, who had opportunity to observe their demeanor and credibility, and his approval of the verdict has great weight with this court in the consideration of this branch of the case. From a very painstaking examination of the whole evidence, there remains no reasonable doubt in our minds as to the guilt of defendant.

5. The question we deem the most serious and important is in reference to the alleged misconduct of one of the jurors. It appears from the record and affidavits in support of the motion for a new trial that during the recess of the court for the Memorial Day exercises one of the jurors became somewhat intoxicated, and appeared in that condition at the opening of court at four o'clock. It is contended that this was gross misconduct on the part of the juror, and such as to vitiate the verdict and require a new trial.

The authorities very generally hold that conduct of this kind on the part of a juror selected to try and determine the issues presented in any case invalidates the verdict, when the intoxication is to such an extent as to deprive him of the free and full exercise of his mental faculties. An examination of some of the earlier cases shows a very strict adherence to that doctrine, though by modern authorities it is much relaxed. The correct rule, as voiced by the later decisions, may be stated, speaking generally, that the use of intoxicants by a juror while engaged in the trial of an action, to such an extent as to render him incapable of appreciating and comprehending the proceedings in court, and unfit for an intelligent, fair, and impartial performance of his duties, when not participated in, assented to, or waived by the parties, vitiates the verdict. Litigants are entitled to a trial by a jury of competent men, and when any one or more of them so far forgets the importance of his station and the responsibilities imposed upon him as to render himself unfit, by the use of intoxicating liquors, to intelligently hear and determine questions presented to him for consideration, the verdict rendered is invalid, and the courts uniformly vacate and set it aside, unless the conduct is waived by the parties, or it be made to appear that no prejudice resulted therefrom. Brown v. State, 137 Ind. 240, 36 N. E. 1108; Green v. State,

59 Miss. 501; State v. Jenkins, 116 N. C. 972, 20 S. E. 1021; State v. Demareste, 41 La. An. 413, 6 South. 654.

The courts have not attempted, however, by judicial decisions, to impose an absolute restraint in respect to indulgence in intoxicants; and it is only in cases where jurors have become so intoxicated as to render themselves incapable of comprehending the proceedings in court that their verdicts are set aside; and not then if the conduct of the juror in that respect be known to the parties, and they fail and neglect to call the attention of the court to the fact; nor when it is made satisfactorily to appear that no prejudice in fact resulted therefrom. Ordinarily, a showing that a juror was intoxicated during the progress of the trial raises an inference or presumption of prejudice (State v. Madigan, 57 Minn. 425, 59 N. W. 490), and the burden is upon the successful party to rebut it by a showing that none in fact resulted.

If a party have knowledge of the misconduct, it is his duty to call the attention of the court to the matter that the juror either may be discharged from the case or placed in the hands of an officer until he shall become sober enough to proceed with his duties. The orderly conduct of a trial does not require that attention be called to the fact in open court. Every purpose may be answered, and every right protected and preserved, by privately informing the presiding judge. Whatever variance there may be in the authorities as to when such conduct renders a new trial absolutely necessary, they are very uniform in holding parties to a reasonably strict observance of this rule; not, perhaps, to the same degree in criminal prosecutions as in civil actions; but it is generally held that a defendant cannot, either in a civil or criminal action, take advantage of the misconduct of a juror after a verdict has been rendered against him when he had knowledge of the misconduct before the conclusion of the trial, and failed to make proper complaint to the court. Cogswell v. State, 49 Ga. 103; Harris v. State, 61 Miss. 304; People v. Deegan, 88 Cal. 602, 26 Pac. 500; Grottkau v. State, 70 Wis. 462, 36 N. W. 31; Mergentheim v. State, 107 Ind. 567, 8 N. E. 568.

This general rule applies to misconduct on the part of jurors of every kind and character. And, further, the question whether a

party was prejudiced by any such misconduct is addressed to the sound discretion and judgment of the trial court, and its determination of the question is subject to review on appeal only in case of its clear abuse. As stated in Hewitt v. Pioneer-Press Co., 23 Minn. 178, the granting of a new trial for misconduct of a juror rests in the sound discretion of the trial court, and requires a clear case of abuse to justify a reversal by this court. See also Svenson v. Chicago Great Western Ry. Co., 68 Minn. 14, 70 N. W. 795; Hutchinson v. Consumers, 36 N. J. L. 24; Austin v. State, 42 Tex. 355; Com. v. White, 148 Mass. 429, 19 N. E. 222; People v. Johnson, 110 N. Y. 134, 17 N. E. 684; State v. Taylor, 134 Mo. 109, 35 S. W. 92. The same rule applies to an order refusing a new trial.

From these rules and principles of the law it follows that it was incumbent upon defendant, in order to justify the trial court in granting him a new trial on this ground, to establish affirmatively to the satisfaction of that court: (1) That the juror was, during the trial of the action, so intoxicated from the use of liquors as to impair his faculties, and to render him for the time being unfit for service; and (2) that he was unaware of that condition of the juror until after the verdict, and did not participate in bringing the same about. And the question for this court to determine is whether, upon the showing made in that behalf, the trial court abused its discretion in denying his motion.

That the juror complained of in the case at bar was, in a measure, at least, intoxicated during the time counsel for the state was presenting the case to the jury, and for a short portion of the time defendant's counsel was presenting his case, is made reasonably apparent by the affidavits in support of the motion for a new trial. The extent of the intoxication is not so clear. The juror himself admitted that he drank intoxicating liquor during the recess of the court; that he was in the habit of drinking such liquors; but that he was not drunk, and was able to comprehend all that took place in court, he expressly asserts, though he concedes that he was somewhat drowsy during the argument of the county attorney. So his intoxication to some extent may be conceded, though, after

87 M.—4

the recess of the court at six o'clock, when the court reconvened at half past seven, the juror had fully recovered from the effects of his indulgence, and took an active part in all that transpired subsequent to that hour.

To establish the fact that he was unaware of the condition of the juror, defendant presented the affidavits of his attorneys. Two of the attorneys—Messrs. Peterson and Haugland—stated in their affidavits that they were not aware and had no knowledge of the juror's misconduct before the verdict was rendered. The third attorney stated that he "had no positive and conclusive knowledge" that said juror was under the influence of liquor, nor did he know that the juror had been drinking intoxicating liquor while acting as a juror in said action, until after verdict. This affidavit is clearly evasive. Whether the attorney had "positive" or "conclusive" knowledge is not the test. If he had any knowledge or notice at all of the intoxication of the juror it was his duty to call the attention of the court to the fact. Defendant himself made no affidavit as to whether he had any information on this subject before the verdict, but this fact should not militate against him. He was represented by his counsel, and, in the nature of things, relied wholly upon them for the proper conduct of his defense. If it had been made to appear unequivocally that each and all of his attorneys were without knowledge of the misconduct of the juror before verdict, the absence of a showing on his part in that particular would not be conclusive against him; though we do not wish to be understood as holding by this statement that the circumstances of a particular case might not be such as to require a personal showing by the party, as well as by his attorneys.

Whether the showing made in the case at bar was sufficient under all the circumstances, the extent of the intoxication, and whether the presumption of prejudice arising therefrom was overcome and rebutted, were for the trial court to determine. As already suggested, these questions were addressed to the sound discretion and judgment of that court, to be interfered with only upon a clear showing of an abuse of that judicial function. After a very serious consideration of this feature of the case, we are unable to say that there was such an abuse of discretion as to

justify a reversal of the order appealed from. The position of the trial judge placed him in a much better position than this court to determine the effect of the conduct complained of, and his well-known judicial probity and fairness preclude the suggestion that he acted otherwise than impartially. He found from the affidavits presented on the hearing before him that defendant's counsel had notice of the conduct of the juror before verdict, and his determination of that question is final. State v. Madigan, 66 Minn. 10, 68 N. W. 179.

We do not wish to be understood as approving in the slightest degree conduct of this character on the part of jurors. It is highly reprehensible, and calls for the prompt and effective action of the trial court when attention is called to it. When a person is placed upon his trial for a crime, which may, if he be found guilty, require his imprisonment, he is entitled to an orderly, dignified trial, conducted by a court and jurors possessing their faculties, and having due regard for the grave responsibility resting upon them; and when jurors, by an indulgence in intoxicating liquors, so impair their faculties as to unfit themselves for intelligent service, it is the duty of a trial court to set their verdict aside, guided in the performance of that duty by the rules and principles we have adverted to in this opinion.

A number of assignments of error are made in respect to the rulings of the trial court on the subject of the admission and rejection of testimony and in reference to the charge to the jury. We have examined all the assignments with care, and find no error of a prejudicial nature. The charge of the learned trial court was very full and explicit, stating clearly to the jury the law bearing upon every question in the case. It was fair and impartial, and covered every question the defendant had any right to insist should go to them.

Order affirmed.