# H. F. SHEPHERDSON COMPANY v. CENTRAL FIRE INSURANCE COMPANY OF BALTIMORE AND OTHERS.[1]

July 20, 1945.

No. 33,950.

[1]Reported in 19 N. W. (2d) 772.

*Bowen and Bowen,* for appellants.

*Dorsey, Colman, Barker, Scott & Barber, Charles F. Noonan,* and *Herbert F. Horner,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action upon three fire insurance policies issued by the respective defendants insuring a certain grain elevator in Minneapolis owned by M. B. Lytle, doing business as Harbor Elevator, and providing that loss, if any, covered thereby be payable to plaintiff, H. F. Shepherdson Company, a corporation, as mortgagee, as its interests

may appear. The elevator property was totally destroyed by fire on May 7, 1941, and the trial court made findings and ordered judgment in favor of plaintiff in the sum of $2,230.76 plus interest, the amount claimed due on the mortgage at the time of the fire loss.

The facts are as follows: On July 28, 1939, M. B. Lytle, desiring to obtain money to put the elevator in operation, entered into an agreement with plaintiff for this purpose. The agreement provided that plaintiff was to advance funds for the purchase of grain and for the expenses incident to placing the elevator in operating condition, and that plaintiff and Lytle were to share equally in the net operating profits or losses. It further provided that Lytle would cause to be executed and delivered to plaintiff a first mortgage on the elevator property to secure plaintiff for such advances and for any operating losses that might be sustained. By its terms, the agreement was to terminate on April 30, 1940, unless renewed by mutual consent of the parties in writing.

On July 28, 1939, Lytle and his wife executed and delivered to plaintiff a first mortgage on the premises to secure a promissory note for $1,000. Subsequently it developed that additional funds were necessary, and on August 14, 1939, another mortgage was executed and delivered by Lytle and wife to secure plaintiff in the sum of $3,000 for such additional advances. Both mortgages were duly recorded.

On April 30, 1940, the date of the expiration of the agreement, the parties ceased operating in the grain business, and plaintiff did not thereafter advance any further funds in connection therewith or otherwise actively engage therein.

On November 1, 1940, Lytle procured the three identical fire insurance policies from the respective defendants which are the basis of this action. Each of said policies described M. B. Lytle as the owner of the property, each was in the sum of $5,000 and effective for one year, and each contained the statutory union mortgage clause making the proceeds in case of loss payable to plaintiff "as its interest may appear."

On May 7, 1941, while the policies were in effect, the elevator was totally destroyed by fire. On June 11, 1941, Lytle was indicted for arson. He was tried and convicted on November 29, 1941, and his conviction was affirmed by this court on January 2, 1943. See, State v. Lytle, 214 Minn. 171, 7 N. W. (2d) 305. At the time of the fire, as a result of the operations between plaintiff and Lytle, there was due and owing plaintiff from Lytle a sum of money which the court found to be $2,230.76. The mortgages were still in effect, and the court determined that under the mortgage clause in the policies plaintiff should recover the aforesaid sum plus interest from May 7, 1941, prorating the amount due equally amongst the three defendants.

On May 7, 1941, Lytle executed an assignment of his right, title, and interest in and to the proceeds to be paid under the policies to the National Surety Corporation. On May 16, 1941, he assigned to Joyce Insurance, Inc. the "proceeds of any insurance that may become payable as a result of fire" to the amount of the insurance premiums advanced by Joyce Insurance, Inc.

On February 18, 1943, shortly after this court affirmed the conviction of Lytle, plaintiff, through its attorneys, notified Joyce Insurance, Inc., agent for defendants, that it desired to file proofs of loss under the three policies. On February 20, 1943, Joyce Insurance, Inc. referred plaintiff's letter to the Western Adjustment & Inspection Company, which was handling the loss arising out of said fire for defendants. On February 24, 1943, plaintiff, having been advised that no "proof of loss" forms were to be furnished by the Western Adjustment &. Inspection Company, prepared three proofs of loss, one against each defendant, and forwarded them to Joyce Insurance, Inc., agent of defendants, which in turn forwarded them to the Western Adjustment & Inspection Company on February 25, 1943. On March 2, 1943, Western Adjustment & Inspection Company returned the proofs of loss and the letter of February 24 to counsel for plaintiff without comment. In the "proofs of loss" furnished by plaintiff, the cause and origin of the fire were therein stated to be "unknown." On March 6, 1943, this

action was commenced and ultimately determined in favor of plaintiff. From the court's order denying defendants' motion to vacate the findings and order for judgment or for a new trial, this appeal is taken.

On appeal, defendants contend (1) that plaintiff as a copartner under the agreement of July 28, 1939, cannot be regarded as a mortgagee under the statutory union mortgage clause; that plaintiff as a partner was excluded from the immunities extending to bona fide mortgagees by the policies and bound by the fraudulent actions of Lytle, its agent; (2) that plaintiff is barred herein because of its failure to provide defendants with sworn statements of loss within a reasonable time, and that its action is premature, since it was commenced within 11 days after furnishing proofs of loss, notwithstanding provisions in the policies which permit defendants 60 days thereafter in which to pay the loss claimed; (3) that the evidence does not sustain the finding that Lytle was indebted to plaintiff in the sum of $2,230.76 at the time of the fire loss; (4) that the court erred in receiving in evidence ledger sheets of plaintiff made from journals not available or presented in evidence; (5) and, finally, that in any event interest should not be allowed prior to April 26, 1943, 60 days subsequent to the filing of the proofs of loss by plaintiff.

The policies, which were introduced in evidence, include the following provisions:

"Subject to the stipulations, provisions and conditions contained in this policy the loss, if any hereunder, is hereby made payable to H. F. Shepherdson Company, as its interest may appear.

\* \* \* \* \*

"If this policy shall be made payable to a mortgagee of the insured real estate, no act or default of any person other than such mortgagee, or his agents, or those claiming under him, shall affect such mortgagee's right to recover in case of loss on such real estate."

The law is well established and the policies provide that a mortgagee protected by such a clause is not affected by any act, neglect,

omission, or default of the mortgagor. It has frequently been held by this court that the mortgagee's insurance cannot be destroyed by the defaults of others, and that its validity depends solely upon the course of action of the mortgagee. It is not affected by actions of the mortgagor of which the mortgagee is ignorant, whether such acts be committed prior or subsequent to the issuance of the mortgage clause. See, Allen v. St. Paul F. & M. Ins. Co. 167 Minn. 146, 208 N. W. 816; Bankers Joint Stock Land Bank v. St. Paul F. & M. Ins. Co. 158 Minn. 363, 197 N. W. 749; Magoun v. Fireman's Fund Ins. Co. 86 Minn. 486, 91 N. W. 5, 91 A. S. R. 370.

Here, it is clear that under ordinary circumstances any acts of Lytle in setting the fire, in assigning the proceeds of the policies, or in any other matters or defaults under the policies were not binding upon plaintiff and did not bar the latter from collecting under the terms of such policies. However, it is contended by defendants that the partnership agreement on July 28, 1939, nullified the mortgagor-mortgagee relationship existing between plaintiff and Lytle and created an agency between the parties, making plaintiff and Lytle agents of each other and hence binding plaintiff by the defaults and fraudulent actions of Lytle.

Reference to the agreement establishes that plaintiff's interest as a partner thereunder ceased and terminated as of April 30, 1940, by virtue of its terms. Thereafter plaintiff did not participate in the grain-marketing operations thereunder or otherwise engage as a partner in Lytle's ventures. No evidence of either an oral or written agreement extending the partnership by mutual consent was submitted. Six months after such expiration date the policies of insurance were written, and the terms thereof clearly specified that M. B. Lytle was the owner of the property and held himself forth as a sole trader and that plaintiff's interests in the premises were limited to those of a mortgagee thereon. Minn. St. 1941, § 323.30 (Mason St. 1927, § 7414), provides that a partnership is dissolved by the termination of the definite term or particular undertaking specified in the agreement. It is true that § 323.29 (§ 7413) provides that upon dissolution the partnership continues

until its affairs are wound up; but this, by virtue of § 323.34 (§ 7418), merely extends the agency of a partner to those acts necessary in winding up the partnership affairs or completing transactions unfinished at the dissolution or termination date. There is nothing in said sections which extends the power of a partner so as to bind his former partner in matters such as are here involved, arising long subsequent to the termination date of the partnership. It is true that a few book entries made after April 30, 1940, indicate that plaintiff made payments thereafter to Lytle. However, as the trial court found, such payments related merely to adjustments of matters which had transpired prior to the expiration of the partnership and made necessary by events taking place thereafter. Whether such payments be regarded as those required in winding up the affairs of the partnership, or otherwise, certainly they could not be regarded as extending the partnership agreement in conflict with the plain terms thereof which provided for its termination on April 30, 1940.

Since the actions of Lytle subsequent to April 30, 1940, in violation of the terms of the policies were not within the legal concept of acts necessary to wind up the affairs of the partnership, we hold that at all times subsequent to that date Lytle had ceased to be the agent or partner of plaintiff as to any of the matters relating to the fire, the policies, or claims made thereunder. For this reason, the conclusion follows that the defaults and fraudulent actions of Lytle are in no respect binding upon plaintiff.

■ Defendants contend that plaintiff, by virtue of the provisions of the policies, was required to furnish proofs of loss within a reasonable time after May 7, 1941, and that its failure to do so eliminated liability on the part of defendants. The policies define M. B. Lytle as the insured. The loss-payable clause protecting plaintiff does not designate plaintiff as an insured. The provision with reference to notice provides:

"In case of any loss or damage, the company, within sixty days after the *insured* shall have submitted a statement as provided in the preceding clause, shall either pay the amount for which it shall

be liable, * * * or replace the property with other * * * or * * * within fifteen days * * * notify the insured of its intention to rebuild * * *." (Italics supplied.)

Accordingly, the duty of furnishing proofs of loss, by the terms of the policies, did not fall upon the mortgagee. Ordinarily, the mortgagee is not in a position to know the facts and circumstances surrounding a fire loss, including the value of the property destroyed, the nature and origin of the fire, and the many other things which the insured, as distinguished from the mortgagee, may be expected to know. Here, the evidence does not disclose whether the insured furnished proofs of loss to defendants. The record would seem to indicate that he did furnish such proofs, for within a short time after the fire adjusters for defendants had complete information and details with reference thereto,.access to the books and records of the insured, and in fact had investigated the loss to the extent that they were able to press criminal charges against insured shortly thereafter. In any event, if Lytle failed to furnish such proofs of loss, we are of the opinion that his shortcomings in this respect are not chargeable to the mortgagee and do not affect its right to recover under the policies. The rule governing this situation is set forth in 5 Appleman, Insurance Law and Practice, § 3485, as follows:

"* * * The majority rule has been, in such situations, that the duty fixed by the policy is imposed upon the mortgagor alone, and not upon the mortgagee, so that the mortgagee's right is not affected by the neglect or failure of the mortgagor. If the insured fails, therefore, to file a proof of loss, particularly under the union, standard, or New York forms of loss payable clause, the right of the mortgagee is not destroyed."

As supporting the foregoing majority rule, the author cites, among others, Germania F. Ins. Co. v. Bally, 19 Ariz. 580, 173 P. 1052, 1 A. L. R. 488; Bank of Oroville v. Minnesota F. Ins. Co. 132 Cal. App. 510, 23 P. (2d) 83; Queen Ins. Co. v. Dearborn S. L. & B. Assn. 75 Ill. App. 371, affirmed, 175 Ill. 115, 51 N. E. 717; Northern

Assur. Co. v. Chicago Mut. B. & L. Assn. 98 Ill. App. 152, affirmed, 198 Ill. 474, 64 N. E. 979; Ohio-German F. Ins. Co. v. Krumm, 31 Ohio Cir. Ct. R. 409. See, Newman v. Springfield F. & M. Ins. Co. 17 Minn. 98 (123).

Under the above authorities, we hold that no obligation rested upon plaintiff to furnish proofs of loss, and that any deficiency either as to time of furnishing such proofs, or as to the contents thereof, would not affect its rights under the policies or establish that this action was prematurely brought.

■ The remaining contentions of defendants deal with the evidence submitted to establish the amount of indebtedness owing from Lytle to plaintiff and its insufficiency to sustain the findings of the trial court with reference to this question. The trial court found the amount due to be $2,230.76 as of the date of the loss.

In actions on accounts, a finding of the balance due negatives items litigated and not allowed by the trial court. Here, the burden was upon defendants to show that there was no substantial evidence reasonably tending to sustain the trial court's findings as to the amount due from Lytle to plaintiff. See, McAlpine v. Millen, 104 Minn. 289, 116 N. W. 583; Walker v. Patterson, 166 Minn. 215, 208 N. W. 3; Kitzman v. Postier & Kruger Co. Inc. 204 Minn. 343, 283 N. W. 542. The dispute in some respects appears to rise from differing interpretations of the agreement of July 28, 1939. Defendants contend that thereunder certain charges were made against repairs and upkeep which properly should have been made against cost of operations; and that the parties wrongfully credited profits from various grain transactions prior to the date set for the accounting by the terms of the contract.

In support of their contentions, defendants presented an expert accountant, who analyzed the ledger sheets of plaintiff and reached the conclusion based upon his interpretation of the contract, that no indebtedness was due from Lytle to plaintiff at the date of the fire. Plaintiff, on the other hand, submitted its ledger sheets kept in the regular course of business, which indicated a balance due as found by the trial court. It further presented the testimony of

an expert, its former treasurer, who had charge of its books, explained the various credit and debit entries therein, and demonstrated convincingly how such balance was fixed and determined. His conclusion depended to some extent upon the construction given the contract by Lytle and plaintiff during the term thereof. Both partners having resorted to the testimony of experts and drawn conclusions from the ledger sheets submitted, the trial court was entitled to accept the version of plaintiff's expert, which the court believed to be correct and which was corroborated by other evidence submitted. See, State v. Clements, 82 Minn. 434, 85 N. W. 229; State v. Salverson, 87 Minn. 40, 91 N. W. 1; Watson v. Gardner, 183 Minn. 233, 236 N. W. 213.

In addition, plaintiff presented a statement signed by Lytle, consisting of an exact copy of the ledger sheets received in evidence, wherein Lytle acknowledged that such ledger sheets were true and correct and that the amount due plaintiff under the agreement was in accordance with the amount established by such ledger sheets. This signed statement was made by Lytle shortly after the fire and long prior to the litigation between plaintiff and defendants. It was an admission by Lytle against his interests, for, obviously, if he owed plaintiff a less amount he stood to receive more from the proceeds of the policies. While his admissions in this respect are not binding or conclusive insofar as defendants are concerned, they would appear to be of great probative value and to indicate the practical construction given the contract by the parties thereto, which in itself was entitled to consideration by the trial court. See, 2 Dunnell, Dig. & Supp. § 1820. It may also be noted here that the insurance involved was not written until after the termination of the partnership agreement and the book entries establishing the balance due from Lytle to plaintiff, now disputed by defendants.

After a full and fair consideration of the evidence submitted, including the contract involved, the construction thereof by the parties thereto, the testimony of the accountants, and the docu-

mentary proof submitted, we hold that the findings of the trial court are sufficiently sustained thereby and must be affirmed.

■ Defendants assert that the court improperly received in evidence the ledger sheets of plaintiff, contending that the failure of plaintiff to submit the original entry books barred the ledger sheets made up therefrom under Minn. St. 1941, § 600.05 (Mason St. 1927, § 9876). Plaintiff's president testified that the ledger sheets were made up from journal entries which had been turned over to the custodian of the building in which plaintiff had its offices at the time plaintiff removed therefrom. The custodian had subsequently died, leaving no record of where he had placed the books in question, and diligent search had failed to locate them thereafter. Plaintiff's assistant treasurer, who was in charge of the books, established that the entries made on the ledger sheets consisted of charges involving money or goods furnished or received in the usual course of business, and that the entries were made under his supervision and direction substantially contemporaneously with the transactions referred to and as a part of plaintiff's system of accounts. This would seem to bring the ledger sheets within the provisions of the aforesaid statute, which provides that entries made in the usual course of business in regular books of account or in a so-called loose-leaf system of keeping accounts shall be received in evidence if it appears that the entries were made contemporaneously with the transactions by a duly authorized person and as a part of the general system of accounts in the ordinary course of business.

Likewise, under L. 1939, c. 78, § 2, Minn. St. 1941, § 600.02 (Mason St. 1940 Supp. § 9870-2), known as the Uniform Business Records As Evidence Act, it is provided:

"A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of

the court, the sources of information, method and time of preparation were such as to justify its admission."

Under this section, the court acted well within its discretion in admitting the records in question.

Aside from the statutes above referred to, it would appear that the ledger sheets in question were admissible under the common-law rules applicable thereto. It is well established that entries made in the regular course of business under circumstances calculated to insure accuracy and precluding any motive for misrepresentation, are admissible as prima facie evidence of the facts stated. See, 2 Dunnell, Dig. & Supp. § 3346. As stated in Tiedt v. Larson, 174 Minn. 558, 563, 219 N. W. 905, 907:

"* * * Entries in books of account are admissible, not alone under the 'shop book rule' of the common law and statute (G. S. 1923, § 9876) which admits only the 'account books' of a party to the 'cause or proceeding.' Independent of and in addition to that rule is another which is not confined to books of account nor to records made by a party to the action. As formulated from our decisions it is this: '*Entries* or memoranda made by third parties in the *regular course of business,* under circumstances calculated to insure accuracy and precluding any motive of misrepresentation, are admissible as prima facie evidence of the facts stated.' 2 Dunnell, Minn. Dig. (2 ed.) § 3346. Its [the rule's] historical and practical justifications are stated in Wigmore, Ev. § 1517, et seq. It is there said, § 1521, that to invoke the rule it is necessary 'that the witness should be somehow unavailable.' That condition is no longer an essential of admissibility. * * *

" 'The value of the entry, as evidence, lies in this, that it was contemporaneous with the principal fact done. * * * It is not merely the declaration of the party, but it is a verbal contemporaneous act, belonging, not necessarily indeed but ordinarily and naturally, to the principal thing. * * *' 1 Greenleaf, Ev. (16 ed.) § 120 * * *.

* * * * *

"The sufficiency of the preliminary proof to admit 'regular entries' is for the trial judge. It is a problem with respect to which his discretion is not narrowly limited. Some records, for example those made after an action has been commenced or a controversy has arisen, may be open to question. But made in the ordinary course of business and before any issue arises, they are 'prima facie consistent with truth' and have 'all the appearance of exactitude.' * * * Such entries are usually good evidence, for they have no purpose but to show the facts and their recollection does not change, as may that of a witness who has become interested to have a law suit go his way or that of his friend or relative." (Italics supplied.)

Under the foregoing authorities, we hold that the court did not err in receiving the loose-leaf ledger sheets of plaintiff.

■ The trial court permitted interest from and after May 7, 1941, the date of the fire. Since we have held that the obligation to furnish proofs of loss does not rest upon the mortgagee, it would appear that the obligation resting upon the insurers attaches as of the date of loss, and that hence interest should properly be computed from that time.

Affirmed.