# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A14-0247

Commerce Bank,
Appellant,

vs.

West Bend Mutual Insurance Company,
Respondent.

**Filed September 22, 2014**
**Reversed and remanded**
**Reyes, Judge**

Dakota County District Court
File No. 19HACV13687

J. Robert Keena, Wilbert V. Farrell, Hellmuth & Johnson, PLLC, Edina, Minnesota (for appellant)

Tony R. Krall, Lucas C. Laakso, Hanson Lulic & Krall, LLC, Minneapolis, Minnesota (for respondent)

Considered and decided by Reyes, Presiding Judge; Hooten, Judge; and Willis, Judge.[*]

## S Y L L A B U S

Respondent insurer's denial of coverage for property damage that resulted from the non-party mortgagor allowing the property to remain vacant for more than 60 days does not apply to appellant mortgagee because, under a standard mortgage clause, the insurance covering the mortgagee is not invalidated by the mortgagor's acts or neglect.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## O P I N I O N

**REYES**, Judge

The district court granted summary judgment in favor of respondent insurer, which denied coverage to appellant bank, the mortgagee and an additional insured, based on an exclusion from coverage for vandalism damage if the insured property remained vacant for more than 60 days. On appeal, appellant bank argues that the district court erred by not applying Minnesota law, which establishes that a mortgagee cannot be denied payment based on the mortgagor's acts or neglect under a standard mortgage clause. We reverse and remand.

## FACTS

This insurance-coverage dispute arises from appellant Commerce Bank's claim against respondent West Bend Mutual Insurance Company for insurance coverage of damage to real property located at 12345 Portland Avenue South in Burnsville. The facts are undisputed.

In 2008, Commerce loaned $3.2 million to 12345 Portland Buildings, LLC, the owner of the property. Under the loan agreement, Commerce secured a mortgage on the property. At that time, the owner had an insurance policy (the policy) with The Hartford, West Bend's predecessor in interest. The policy provided coverage for "loss of or damage to buildings or structures to each mortgageholder." The policy further provided:

> [i]f we deny [owner's] claim because of [owner's] acts or because [owner] ha[s] failed to comply with the terms of this policy, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

2

(1) Pays premium due under the policy at our request if [owner] ha[s] failed to do so;

(2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of [owner's] failure to do so.[1]

All the terms of this policy will then apply directly to the mortgageholder.

The policy also limited coverage in cases of vacancy, providing in relevant part:

8. Vacancy

a. Description of Terms

(1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in Paragraphs (a) and (b) below:

. . . .

(b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

(i) Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

(ii) Used by the building owner to conduct customary operations.

(2) Buildings under construction or renovation are not considered vacant.

b. Vacancy Provisions

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

---

[1] The parties do not dispute Commerce's compliance with the payment and proof-of-loss requirements set forth in these provisions.

(1)　　We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:
- (a)　Vandalism;
- (b)　Sprinkler leakage, unless you have protected the system against freezing;
- (c)　Building glass breakage;
- (d)　Water damage;
- (e)　Theft; or
- (f)　Attempted theft.

As early as August 2007, although the property appeared to be in the process of being renovated, it was vacant, and police responded to numerous break-ins that resulted in vandalism. In the summer of 2010, the property sustained damage from vandalism, and the owner submitted an insurance claim to The Hartford under the policy. The Hartford denied this claim in December 2010, stating:

> "[a]lthough you reported the date of loss as 07/28/2010 our investigation has reviled [sic] these damages has [sic] occurred over a period of time from 12/24/2007 through the date of loss you provided. Occurrences stem from your tenant abandoning the building without completing renovations they started and the building being vacated from 12/24/2010 [sic] through the present."

The owner had difficulty making loan payments to Commerce, and, by the fall of 2010, the loan was in default. West Bend, which succeeded The Hartford as the insurance carrier, listed Commerce as the mortgagee and an additional insured under the policy, effective February 21, 2011. While Commerce did not have control of the property, it had access to enter the property and contracted with a third party to manage issues such as winterization, electricity, security, insurance claims, lawn care, snow removal, and the building's condition. In August 2011, the third party visited the

4

property, which continued to be vacant, to assess the need for repairs and refurbishment. In September 2011, the property was again vandalized and incurred significant damage, resulting in the loss at issue in this case. In January 2012, Commerce received title to the property by accepting a deed in lieu of foreclosure from the owner. In December 2012, Commerce submitted an insurance claim to West Bend for the September 2011 loss. West Bend denied the claim on the basis that the loss was excluded from coverage because the building had been vacant since at least 2010, more than 60 days prior to the loss, and there was no evidence that the building was under construction or renovation prior to the loss.

Commerce commenced suit against West Bend, alleging breach of contract and seeking declaratory relief based on West Bend's denial of coverage. The parties filed cross-motions for summary judgment, arguing that whether the policy's vacancy provision excluded coverage as to Commerce was a question of law. The district court issued findings of fact[2] citing *Waterstone Bank, SSB v. Am. Family Mut. Ins. Co.*, 832 N.W.2d 152, 156 (Wis. App. 2013), *review denied* (Wis. Nov. 26, 2013), as persuasive authority, concluded that (1) the building was vacant and was not under construction and (2) the policy's vacancy provision created a circumstance of non-coverage rather than an

---

[2] "In summary judgment proceedings under Rule 56, Rules of Civil Procedure, the court cannot summarily try fact issues. The court merely rules that there are no genuine issues as to material facts and decides questions of law. While there is no objection to a court's making findings of fact if it wishes to do so, and such findings may well be helpful in making clear the basis of the trial court's decision, they are not entitled to the respect which an appellate court is required to give findings made pursuant to Rule 52.01." *Whisler v. Findeisen*, 280 Minn. 454, 455 n.1, 160 N.W.2d 153, 154 n.1 (1968).

exclusion to coverage.  As a result, the district court granted summary judgment in favor of West Bend.  This appeal follows.

## ISSUE

May property insurance that covers a mortgagee be invalidated by the mortgagor's acts or neglect?

## ANALYSIS

## I.     Standard of review

The district court properly grants summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law."  Minn. R. Civ. P. 56.03.  We review de novo whether there are any genuine issues of material fact and whether the district court erred in its application of the law.  *STAR Centers, Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76-77 (Minn. 2002).

"In an action to determine insurance coverage, the insured bears the initial burden of proof to establish a prima facie case of insurance coverage and entitlement to benefits."  *Vue v. State Farm Ins. Cos.*, 582 N.W.2d 264, 265 n.2 (Minn. 1998).  The burden then shifts to the insurer to show that an exclusion to coverage applies under the policy.  *Id.*  "The interpretation of insurance contracts is a question of law."  *Quade v. Secura Ins.*, 814 N.W.2d 703, 705 (Minn. 2012).

**II.     Effect of standard mortgage clause on vacancy provision**

"There are generally two types of insurance clauses between an insurer and a mortgagee," a "standard" mortgage clause and an "open form" mortgage clause. *American Nat. Bank and Trust Co. v. Young*, 329 N.W.2d 805, 809-10 (Minn. 1983). Here, it is undisputed that the policy contains a standard mortgage clause, providing that "[i]f we deny [owner's] claim because of [owner's] acts or because [owner] ha[s] failed to comply with the terms of this policy, the mortgageholder will still have the right to receive loss payment . . . ." A standard mortgage clause specifies that "the insurance with respect to the mortgagee shall not be invalidated by the mortgagor's acts or neglect." *Id.* at 810 n.1 (quotation omitted).  As a result, the effect of a standard mortgage clause

> is to make a new and separate contract between the mortgagee and the insurance company, and to effect a separate insurance of the interest of the mortgagee, dependent for its validity solely upon the course of action of the insurance company and the mortgagee, and unaffected by any act or neglect of the mortgagor, of which the mortgagee is ignorant, whether such act or neglect was done or permitted prior or subsequent to the issue of the mortgage clause.

*Id.* at 810 (emphasis omitted) (quoting *Allen v. St. Paul Fire & Marine Ins. Co.*, 167 Minn. 146, 150, 208 N.W. 816, 818 (1926))  "The terms and conditions of the [insurance] contract apply equally to the loss payee and the insured, but the loss payee is only liable for the loss payee's own breaches." *Bast v. Capitol Indem. Corp.*, 562 N.W.2d 24, 27 (Minn. App. 1997).  This independent contract between the mortgagee and the insurer "begins and proceeds" when the contract between the insured and the insurer "fails, or if it never attaches." *Allen*, 167 Minn. at 150, 208 N.W. at 818 (quotation omitted).

7

Notably, "[t]he words 'any acts' as used in a standard mortgage clause do not refer merely to acts prohibited by the contract or to failure to comply with the terms thereof, but *literally embrace any act of the mortgagor*." *Young*, 329 N.W.2d at 810 n.1. (emphasis added) (quotation omitted); *see H.F. Shepherdson Co. v. Cent. Fire Ins. Co.*, 220 Minn. 401, 405-06, 19 N.W.2d 772, 775 (1945) (holding that arson by mortgagor cannot invalidate mortgagee's coverage under standard mortgage clause); *Magoun v. Fireman's Fund Ins. Co.*, 86 Minn. 486, 490-91, 91 N.W. 5, 7 (1902) (holding that a standard mortgage clause is an independent contract of insurance not invalidated by act, neglect, omission or default of mortgagor); *Bast*, 562 N.W.2d at 28 (holding that "when an insurance policy establishes an independent contract between the insurer and the loss payee through use of a standard form mortgage clause, the loss payee is entitled to notice of any material change resulting in a substantial reduction in coverage, notwithstanding the acts of the insured."); *Farmers State Bank v. W. Nat'l Mut. Ins. Co.*, 454 N.W.2d 651, 653 (Minn. App. 1990) (holding that even when insured misrepresented material facts to insurer, the contract was not void as to loss payee because the contract included a standard mortgage clause protecting loss payee).

Commerce argues that the owner's act of, or failure to comply with the policy terms by leaving the property vacant for more than 60 days has no bearing on Commerce's independent entitlement to coverage under the standard mortgage clause. West Bend responds, and the district court agreed, that the vacancy hazards excluded under the policy, such as vandalism, water damage, and theft, "are not policy provisions to be obeyed, but risks that were never assumed." *Waterstone*, 832 N.W.2d at 155.

8

In *Waterstone*, the Wisconsin Court of Appeals interpreted an insurance contract virtually identical with the policy here to uphold an insurance company's denial of coverage to the bank mortgagee. *Id.* at 155-57. The court reasoned that:

> the noncoverage exists by the terms of the vacancy provision and not by any breach or violation by the property owner. Vacancy is not prohibited by the policy. Quite the opposite: the vacancy provision specifically accounts for the possibility that the buildings might become vacant, but excludes loss or damage caused by various perils, including water damage, vandalism and theft, if the vacancy continues for more than sixty days. As defined in the policy, a building is vacant when less than thirty-one percent of the total space is rented and used. The denial of coverage is based on the condition of the building, and not because of any breach or violation of a policy obligation or prohibition by the property owner.

*Id.* at 156. The *Waterstone* court concluded that the "loss was not covered in the first place," because the "vacancy clause [was] not a term or condition, the violation of which by the property owner's acts would forfeit or void the policy," therefore "the mortgageholder clause [did] not create coverage for a risk that was never assumed." *Id.* at 156-57.

While no Minnesota court has addressed the interplay between a standard mortgage clause and a vacancy clause in an insurance contract, the district court's reliance on *Waterstone* directly contravenes the law in Minnesota. *See Mahowald v. Minn. Gas Co.*, 344 N.W.2d 856, 861 (Minn. 1984) (acknowledging that foreign authorities can be persuasive but are not binding). The supreme court unequivocally established in *Young* that, under a standard mortgage clause, "the insurance with respect to the mortgagee shall not be invalidated by the mortgagor's acts or neglect." 329

9

N.W.2d at 810 n.1 (quotation omitted). This principle applies not only when the mortgager's "acts [are] prohibited by the contract or [because of the mortgagor's] failure to comply with the terms thereof, but literally embrace[s] any act of the mortgagor." *Id.* (quotation omitted).

In *Young*, a bank made a loan to Young for the purchase of an airplane that was subsequently confiscated by the Colombian government because of its involvement in drug trafficking. *Id.* at 808. The supreme court held that the bank, the loss payee, was entitled to collect on the insurance policy that Young, the insured, had with the insurer notwithstanding a clause absolving the insurer of liability for losses due to illegal activities or losses sustained outside the territorial limits of the policy. *Id.* at 811-13. The court rejected the insurer's argument that "to allow recovery is to widen the scope of the coverage afforded by the contract between the parties." *Id.* at 812. As a result, even though the loss, which occurred outside the territorial limits established by the policy was not covered with regard to Young, the bank was still entitled to seek coverage under its independent contract with the insurer. *Id.* at 813.

Here, as in *Young*, West Bend's argument that allowing Commerce to recover would "render[] the vacancy provision meaningless" is equally without merit. The district court reasoned that "[t]he non-coverage exists by the terms of the vacancy provision and not by any breach or violation by the property owner." But it was the owner's failure to occupy the property or secure a tenant that comprised the acts or negligence causing the property to remain vacant for more than 60 days. While the owner had no coverage under the policy for its violations, under Commerce's separate

10

and independent policy with West Bend, the vacancy provision applies only when Commerce is guilty of breaching it. *See id.* at 812 ("In other words, the indemnity of the mortgagee is not placed at the whim of the debtor, and is subject only to breaches of which the mortgagee is, himself, guilty." (emphasis omitted) (quoting 5 A.J. Appleman, *Insurance Law and Practice* § 3401, at 292 (1970 & Supp. 1981)) (quotation marks omitted)); *id.* at 812-13 ("However [a coverage clause] defense [which is a perfect defense against the insured] may not be valid against a lienholder who is independently an insured under a 'loss payable' clause of the standard mortgage type." (alterations in original) (quoting R. Keeton, *Insurance Law* § 6.5(e)(2), at 403 n.7 (1971)) (quotation marks omitted)).

The undisputed facts show that, although Commerce had knowledge that the owner had left the property vacant for more than 60 days prior to the September 2011 loss and had access to the property during that relevant time period, Commerce did not have possession or control of the property and had no legal right to remedy the vacancy until January 2012, when it received title to the property. Under controlling law in Minnesota, "the insurance with respect to the mortgagee shall not be invalidated by the mortgagor's acts or neglect." *Young*, 329 N.W.2d at 810 n.1 (quotation omitted). Accordingly, because Commerce did not breach it, the policy's vacancy provision does not apply to Commerce. The district court erred when it granted summary judgment to

West Bend.[3]  Accordingly, we reverse and remand the case for further proceedings not inconsistent with this opinion.

## D E C I S I O N

Under a standard mortgage clause, the mortgagee's insurance with respect to the mortgagee shall not be invalidated by the mortgagor's acts or neglect.  Because we conclude that West Bend's denial of coverage for loss, which was sustained as a result of the owner causing the property to remain vacant for more than 60 days, does not apply to Commerce, the district court erred when it granted summary judgment to West Bend.

**Reversed and remanded.**

---

[3] In addition to reversing the district court's grant of summary judgment in favor of West Bend, Commerce requests that we grant its motion for summary judgment.  But denial of a motion for summary judgment is not ordinarily appealable unless the "trial court certifies that the question presented is important and doubtful."  Minn. R. Civ. App. P. 103.03(i).