October 30, 2015


STATE OF MINNESOTA

IN SUPREME COURT

A14-0247

Commerce Bank,

 Respondent,

vs.

West Bend Mutual Insurance Company,

 Appellant.

ORDER MODIFYING OPINION

Upon the court's own motion and based upon all the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1.  The sentence following the quotation on page 13 of the slip opinion filed October 28, 2015 is modified to read as follows: "West Bend does not ask us to overturn the rule of law of *Young*." The modified sentence previously read: "West Bend does not ask us to overturn *Young*, and we can discern no basis to apply *Young*'s rule of law to this case."

2.  The word "Columbia" on page 13 of the slip opinion filed October 28, 2015 is corrected to, "Colombia."

3. The attached slip opinion, modified as stated above, shall be substituted for the opinion filed October 28, 2015.

Dated: October 30, 2015        BY THE COURT:

David L. Lillehaug
Associate Justice

STATE OF MINNESOTA

IN SUPREME COURT

A14-0247

Court of Appeals

Lillehaug, J.
Took no part, Hudson, J.

Commerce Bank,

Respondent,

vs.

Filed: October 28, 2015
Office of Appellate Courts

West Bend Mutual Insurance Company,

Appellant.

J. Robert Keena, Wilbert V. Farrell IV, Hellmuth & Johnson PLLC, Edina, Minnesota, for respondent.

Tony R. Krall, Lucas C. Laakso, Hanson Lulic & Krall, LLC, Minneapolis, Minnesota, for appellant.

John Neal, Willenbring, Dahl, Wocken & Zimmermann, PLLC, Cold Spring, Minnesota, for amicus curiae Minnesota Association of Farm Mutual Insurance Companies.

John M. Wendland, Saint Paul, Minnesota, for amicus curiae Minnesota Credit Union Network.

Michael K. Thro, Eden Prairie, Minnesota, for amicus curiae Minnesota Bankers Association.

S Y L L A B U S

When a property insurance policy contains both a vacancy clause and a standard mortgage clause, a mortgagee has coverage for vandalism damage to a vacant building

only if the building was vacant because of the "acts" of the owner or if the owner "failed to comply with" the policy terms, and the mortgagee was unaware of such acts or failure.

Reversed and remanded.

O P I N I O N

LILLEHAUG, Justice.

This case requires us to interpret and reconcile two clauses in a property insurance policy: a standard mortgage clause and a vacancy clause. Appellant West Bend Mutual Insurance Company ("West Bend") issued a policy of insurance on a building. Commerce Bank was named in the policy as mortgagee. After the building was vandalized, Commerce Bank made a claim on the policy, but West Bend denied the claim under the vacancy clause. The court of appeals ruled that under the standard mortgage clause, Commerce Bank was entitled to recover. We reverse and remand.

I.

In February 2011, Commerce Bank was added to an insurance policy issued by West Bend to 12345 Portland Buildings, LLC (the "owner" or "policyholder") for the building at 12345 Portland Avenue in Burnsville. The policy insured the property against, among other things, property damage caused by vandalism. The policy contains two clauses that are at the center of this dispute: a standard mortgage clause and a vacancy clause.

Under the heading "Property General Conditions" and the subheading "Mortgageholders," the policy contains the following provision:

2

d. If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

   (1) Pays any premium due under this policy at our request if you have failed to do so; [and]
   (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so . . . .
   . . . .

   All of the terms of this policy will then apply directly to the mortgageholder.

This provision is a so-called "standard mortgage clause" or "union mortgage clause," in that it allows the mortgageholder to recover in some circumstances when the insured cannot. *See Allen v. St. Paul Fire & Marine Ins. Co.*, 167 Minn. 146, 149-50, 208 N.W. 816, 817-18 (1926) (discussing the distinction between a union mortgage clause and an open mortgage clause). The policy designated Commerce Bank as a mortgageholder.

Under the heading "Property Loss Conditions" and the subheading "Vacancy," the policy contains the following provisions:

a. Description Of Terms

   (1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in Paragraphs (a) and (b) below:

   . . . .

      (b)   When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

         (i) Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or
         (ii) Used by the building owner to conduct customary operations.

3

(2) Buildings under construction or renovation are not considered vacant.

b. Vacancy Provisions

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

(1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

   (a) Vandalism;
   (b) Sprinkler leakage, unless you have protected the system against freezing;
   (c) Building glass breakage;
   (d) Water damage;
   (e) Theft; or
   (f) Attempted theft.

(2) With respect to Covered Causes of Loss other than those listed in Paragraphs (1)(a) through (1)(f) above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

In February 2011, when Commerce Bank was added to the policy, the building was vacant and had been so since November 2010; i.e., for more than 60 days. Commerce Bank was aware that the building was vacant.[1] West Bend, however, was not so aware.

The building remained vacant and, on September 15, 2011, it was vandalized. Commerce Bank made a claim for the damage, which West Bend denied based on the vacancy clause. Commerce Bank sued for breach of the insurance contract.

_____

[1] Indeed, in the summer of 2010, Commerce Bank submitted a claim for damage due to vandalism to the building's previous insurer, The Hartford. That claim was denied under a nearly identical vacancy provision.

On cross-motions for summary judgment, the district court granted West Bend's motion, denied Commerce Bank's motion, and dismissed the action. The court determined that West Bend never assumed the risk of vandalism to a vacant building, that vacancy was not a violation of the terms of the policy, and that the vacancy was not caused by a breach or violation by the property owner. The court acknowledged the mortgage clause, but held that West Bend "is only liable to the mortgagee for covered losses," and that "[i]n this case, there was never any coverage offered for a vacant building, so [Commerce Bank] cannot recover."

The court of appeals reversed. *Commerce Bank v. W. Bend Mut. Ins. Co.*, 853 N.W.2d 836 (Minn. App. 2014). The court held that Commerce Bank could recover because "under a standard mortgage clause, 'the insurance with respect to the mortgagee shall not be invalidated by the mortgagor's acts or neglect.' " *Id.* at 841 (quoting *Am. Nat'l Bank & Trust Co. v. Young*, 329 N.W.2d 805, 810 n.1 (Minn. 1983)). Thus, "[w]hile the owner had no coverage under the policy for its violations, under Commerce's separate and independent policy with West Bend, the vacancy provision applies only when Commerce is guilty of breaching it." *Id.* at 842. In this case, the court said, "it was the owner's failure to occupy the property or secure a tenant that comprised the acts or negligence causing the property to remain vacant for more than 60 days." *Id.*

We granted West Bend's petition for review.

5

II.

A.

On appeal from summary judgment, this court reviews de novo whether there are any genuine issues of material fact and whether the district court erred in its application of the law to the facts. *STAR Ctrs., Inc. v. Faegre & Benson, LLP*, 644 N.W.2d 72, 76-77 (Minn. 2002). We view the evidence in the light most favorable to the party against whom summary judgment was granted—here, Commerce Bank. *Id.*

The interpretation of an insurance policy and the application of the policy to the undisputed facts of a case are questions of law that this court reviews de novo. *Am. Family Ins. Co. v. Walser*, 628 N.W.2d 605, 609 (Minn. 2001). An insurance policy must be read as a whole, and unambiguous language must be given its plain and ordinary meaning. *Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (2013). Provisions in a policy must be read in context with all other relevant provisions. *Smitke v. Travelers Indem. Co.*, 264 Minn. 212, 214, 118 N.W.2d 217, 218 (1962).

B.

The mortgage clause in West Bend's policy is a "standard" or "union" mortgage clause. As opposed to an "open" mortgage clause, under which the mortgagee simply stands in the shoes of the mortgagor, a standard mortgage clause creates an independent contract between the insurer and the mortgagee that prevents the mortgagee's interest from being invalidated by the conduct of the mortgagor. *Allen*, 167 Minn. at 149-50, 208 N.W. at 817-18 (quoting *Syndicate Ins. Co. v. Bohn*, 65 F. 165, 178 (8th Cir. 1894)); *Magoun v. Fireman's Fund Ins. Co.*, 86 Minn. 486, 490, 91 N.W. 5, 7 (1902); *see* 4

6

*Couch on Insurance* 3d ("*Couch*") § 65:32 (1996 & 2014 Supp.). For example, if the mortgagor sets fire to his own building, the mortgagee can still recover under a standard mortgage clause. *See H.F. Shepherdson Co. v. Cent. Fire Ins. Co.*, 220 Minn. 401, 404-06, 19 N.W.2d 772, 774-75 (1945); 4 *Couch* § 65:57.

The terms of the mortgagee's contract are the same as those of the mortgagor's policy. *See Am. Nat'l Bank & Trust v. Young*, 329 N.W.2d 805, 812 (1983); *Bankers' Joint Stock Land Bank v. St. Paul Fire & Marine Ins. Co.*, 158 Minn. 363, 366, 197 N.W. 749, 750 (1924); 4 *Couch* § 65:32 (stating that the mortgagee's contract is "engrafted upon the main contract," and "is rendered certain and understood by reference to the policy"). "[A] mortgagee claiming under a standard mortgage clause asserts his or her right subject to all the terms and conditions of the contract of insurance, except those which are expressly waived in the mortgage clause." 4 *Couch* § 65:46.

In this case, there was no express waiver of any clause. Indeed, the policy stated that, under the standard mortgage clause, "[a]ll of the terms of this policy will . . . apply directly to the mortgageholder." Under that clause, "provisions of the policy which are clearly intended to condition the insurance granted by the insurer to both mortgagor and mortgagee form a part of the contract of insurance with the mortgagee as well as with the mortgagor." 4 *Couch* § 65:49. When a mortgage clause and another provision of a policy are in tension, they "must be read together and harmonized . . . when reasonably possible." *Id.* § 65:45. However, the mortgage clause

> must prevail in the case of an irreconcilable conflict between it and other provisions of the policy. That is, insofar as the provisions of the policy are inconsistent with, and antagonistic to, the clause protecting the interest of

7

the mortgagee, they must be regarded as inapplicable to the determination of his or her rights.

*Id.*

To summarize, Commerce Bank has a separate and independent insurance policy with West Bend, which includes a standard mortgage clause. *See Allen*, 167 Minn. at 149-50, 208 N.W. at 817-18. The terms of Commerce Bank's policy are "identical" to those of the owner, and thus Commerce Bank's policy includes the vacancy clause. *See Young*, 329 N.W.2d at 812; 4 *Couch* § 65:46. The question is whether the two clauses are susceptible to a reasonable interpretation that avoids a conflict.

Commerce Bank takes the position, adopted by the court of appeals, that the owner's failure to lease the property and keep it occupied—that is, its failure to prevent the property from being vacant for 60 days—constitutes an "act" or "failure to comply with the terms of the policy." Because the property was vacant for more than 60 days, Commerce Bank argues, the vacancy was *necessarily* caused by the property owner's act. By contrast, West Bend takes the position, adopted by the district court, that the policy simply provides no coverage against vandalism during periods when the building is vacant for more than 60 days, and therefore it makes no difference whether or not the owner was responsible for the vacancy.

Neither interpretation harmonizes the vacancy clause with the standard mortgage clause. Therefore, we decline to follow either.

C.

We do not adopt Commerce Bank's interpretation because it would effectively read the vacancy clause out of the mortgagee's policy. As already discussed, the standard

8

mortgage clause creates an independent contract between the insurer and the mortgagee, with the same terms as the contract between the insurer and the owner. The vacancy clause, like every term and condition in the policy, applies to the mortgagee. Under Commerce Bank's interpretation, a vacancy is *always* caused by the owner's failure to ensure that the property is not vacant, so a vacancy would never exclude a claim for coverage. But "[w]e will not adopt 'a construction of an insurance policy which entirely neutralizes one provision . . . if the contract is susceptible of another construction which gives effect to all its provisions and is consistent with the general intent.' " *Eng'g & Const. Innovations, Inc. v. L.H. Bolduc Co.*, 825 N.W.2d 695, 705 (Minn. 2013) (quoting *Wyatt v. Wyatt*, 239 Minn. 434, 437, 58 N.W.2d 873, 875 (1953)).

Commerce Bank is correct that, under a standard mortgage clause, the scope of the act or omission by an insured that allows a mortgagee to recover is broad. "[A] mortgagee's right to recover is not affected or invalidated by the act, neglect, or omission or default of the mortgagor." *Magoun*, 86 Minn. at 490, 91 N.W. at 7; *see also Young*, 329 N.W.2d at 811 (stating that a contract with a mortgagee created by a standard mortgage clause "cannot be invalidated by acts or neglect of the mortgagor"); *Allen*, 167 Minn. at 150, 208 N.W. at 818 (stating that a contract with a mortgagee created by a standard mortgage clause is "unaffected by any act or neglect of the mortgagor, of which the mortgagee is ignorant" (quoting *Bohn*, 65 F. at 178)). We have indicated that the words "any acts" in a standard mortgage clause should be read broadly, and "do not refer merely to acts prohibited by the contract or to failure to comply with the terms [of the

9

contract], but literally embrace any act of the mortgagor." *Young*, 329 N.W.2d at 810 n.1 (quoting 11 G. Couch, *Couch on Insurance* 2d § 42:685, at 344-45 (1963 & Supp. 1976)).

But, here, Commerce Bank's position stretches the standard mortgage clause too far. Not every building vacancy is necessarily caused by the owner's act or failure to act. Under this policy, a building is "vacant" unless at least 31% of its total square footage is being used, by either a lessee or by the building owner, to conduct "customary operations." Applying this definition, a building may become vacant despite the owner's best efforts. A large tenant may move out with little notice or may stay but no longer conduct its "customary operations" in the space. Or a vacancy may be caused by a severe economic downturn. Commerce Bank's interpretation does not account for such possibilities.

By contrast, the policy expressly contemplates that the building may become vacant as a matter of course. Although the policy provides that it will not pay for damage caused by six particular causes (including vandalism) if the building is vacant, it also provides that it will pay for other covered causes (such as fire), albeit at a reduced rate of 85%.

Accordingly, the court of appeals' statement that "it was the owner's failure to occupy the property or secure a tenant that comprised the acts or negligence causing the property to remain vacant for more than 60 days"—essentially a finding of fact—is not necessarily accurate. In their briefs before this court and the court of appeals, neither party referred to any facts in the record about how or why the property became vacant. Our independent review of the record has found none.

10

By the court of appeals' analysis, no inquiry into the actual facts that led to the vacancy is necessary because "the vacancy provision applies only when Commerce [Bank] is guilty of breaching it." *See Commerce Bank*, 853 N.W.2d at 842 (citing *Young*, 329 N.W.2d at 812). In *Young*, there was no question that the policyholder's acts in flying an airplane to Colombia, using it in drug trafficking, and making it subject to seizure by the Colombian government "were the very thing for which the bank's insurance was purchased—to protect it against loss *caused by . . . the* mortgagor." *Young*, 329 N.W.2d at 811 (emphasis added). But our statements in *Young* that a mortgagee loses coverage only when the mortgagee has "breached" or "violated" the terms of a policy should not be read out of context to mean that the scope of coverage may be disregarded even when the owner's acts did not cause the loss of coverage.

## D.

Although the mortgagee's interpretation does not harmonize the standard mortgage clause with the vacancy clause, neither does the insurer's. West Bend argues, relying on the decision of the Wisconsin Court of Appeals in *Waterstone Bank SSB v. American Family Mutual Insurance Co.*, 832 N.W.2d 152 (Wis. Ct. App. 2013), that the vacancy provision denies coverage "based on the condition of the building, and not because of any breach or violation of a policy obligation or prohibition by the property owner." *Id.* at 156. Essentially, West Bend argues that the conduct of the owner is irrelevant: if there is a vacancy at the time of the loss, there is no coverage for anyone, regardless of the cause of the vacancy.

11

We agree with *Waterstone Bank* that under the terms of the vacancy clause, denial of coverage is based on the condition of the covered property. Were this a dispute with the owner, our inquiry would be at an end. But this is not. The policy specifies that the mortgagee has the right to recover if there is a denial of a claim "because of [the policyholder's] acts or because [the policyholder has] failed to comply with the terms of this policy."

Nothing in the policy requires the owner to prevent the property from being vacant, and therefore a vacancy is not necessarily a "fail[ure] to comply with the terms of [the] policy." But certainly a property owner could, by the owner's own act, cause a vacancy. The owner could, for example, charge grossly above-market rents, affirmatively make the building unsuitable, or breach leases and lock out tenants. Under such circumstances, the vacancy would exist, and the owner's claim would be denied, "because of" the owner's acts.

To follow *Waterstone Bank* wholesale would undercut our decision in *Young*. In that case, besides the standard mortgage clause, two policy provisions were at issue: one that denied coverage for flights involving drug trafficking or smuggling and another that stated, "this policy applies only to occurrences, accidents and losses which happen during the policy period while the aircraft is within the Western Hemisphere north of 16° North Latitude (excluding Cuba)." 329 N.W.2d at 808-09. That geographical provision, like the vacancy provision in this case, purported to make coverage turn on an objective, independently verifiable fact about the insured property, rather than any act of the

12

insured. But we held that when the act of the insured (flying the plane to Colombia) triggered the territorial exclusion, the mortgagee was nevertheless covered:

> [A] separate policy of insurance was purchased by the bank [through the standard mortgage clause] to prevent losses caused by the acts of the mortgagor. This is what occurred. [The insurer] argues that to allow recovery is to widen the scope of the coverage afforded by the contract between the parties. We disagree.

*Id.* at 812. West Bend does not ask us to overturn the rule of law of *Young*. Accordingly, we reject West Bend's argument that the owner's conduct with respect to the vacancy is irrelevant to the mortgagee's claim.

West Bend suggests that, by allowing recovery when the owner causes the property to become and remain vacant, we would create coverage for a risk that it never assumed. We disagree. Under the plain words of the policy, Commerce Bank is entitled to coverage when West Bend denies a claim because of the owner's act or breach of the policy terms. Under *Young*, West Bend assumed the risk that the owner would create a vacancy that would require West Bend to pay the mortgagee.

E.

Having rejected the diametrically opposed interpretations proposed by the parties, we interpret the policy according to its terms. The standard mortgage clause states that the mortgagee will have the right to recover if coverage would be denied to the owner "because of [the owner's] acts or because [the owner has] failed to comply with the terms of this policy." The term "acts" must be construed broadly. *See Young*, 329 N.W.2d at 810 n.1. Reading the standard mortgage clause and the vacancy clause together, and applying *Young*, the mortgagee has coverage if there is a vacancy because of the acts of

13

the owner. However, if the vacancy is not due to the acts of the owner, the mortgagee does not have coverage.

Applying this rule of law to the record in this case, we must reverse the decision of the court of appeals, which adopted Commerce Bank's erroneous theory. But we cannot reinstate the district court judgment, which was based on West Bend's erroneous theory.

Nor are we able to order entry of judgment. Summary judgment is appropriate only if "there is no genuine issue as to any material fact" and a "party is entitled to judgment as a matter of law." Minn. R. Civ. P. 56.03. Here the parties brought cross-motions for summary judgment, in tacit agreement that there were no disputed issues of material fact. *See Remodeling Dimensions, Inc. v. Integrity Mut. Ins. Co.*, 819 N.W.2d 602, 610 (Minn. 2012). But that tacit agreement was based on the shared, mistaken assumption that the cause of the vacancy was irrelevant. The district court did not make a finding on that issue.

A remand is required. The district court must determine whether the owner's acts caused the vacancy. If so, an additional factual issue arises: whether the mortgagee was aware of the acts. *See Allen*, 167 Minn. at 150, 208 N.W. at 818 (stating that the mortgagee's interest is "unaffected by any act or neglect of the mortgagor, *of which the mortgagee is ignorant*" (emphasis added) (quoting *Bohn*, 65 F. at 178)); *Young*, 329 N.W.2d at 810. When and by what procedures the remaining issues are litigated and resolved rests within the sound discretion of the district court.

III.

Accordingly, we reverse the decision of the court of appeals and remand to the district court for further proceedings consistent with this opinion.

Reversed and remanded.


HUDSON, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.