# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A23-0519

Great Northwest Insurance Company,
Appellant,

vs.

Hector A. Campbell,
Respondent,

Betty L. Campbell,
Defendant.

**Filed February 5, 2024**
**Affirmed**
**Gaïtas, Judge**

Ramsey County District Court
File No. 62-CV-22-6321

Christopher A. Wills, Rajkowski Hansmeier LTD, St. Cloud, Minnesota (for appellant/cross-respondent)

Edward E. Beckmann, Beckmann Law Firm, LLC, Bloomington, Minnesota; and

Thomas J. Okoneski, Okoneski Law Firm, LLC, North St. Paul, Minnesota (for respondent/cross-appellant)

Considered and decided by Gaïtas, Presiding Judge; Segal, Chief Judge; and Cleary, Judge.[*]

## SYLLABUS

Minnesota Statutes section 65A.10, subdivision 1 (2022), requires replacement cost

insurance to cover the cost of repairing any loss or damaged property in accordance with

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

the minimum state or local codes, which, "[i]n the case of a partial loss," includes only "the damaged portion of the property." When an insurance policy covers the cost of replacing damaged roof shingles, but the shingles cannot be replaced according to code unless repairs are made to roof decking that was not damaged by the insured event, section 65A.10, subdivision 1, requires the insurer to also cover the cost of repairing the roof decking.

## OPINION

**GAÏTAS**, Judge

This appeal arises from a dispute regarding insurance coverage for roof repairs following a hailstorm. Respondent and cross-appellant Hector A. Campbell owned a home in St. Paul. Appellant and cross-respondent Great Northwest Insurance Company insured Campbell's home. The insurance policy covered direct physical loss or damage to "the outer most layer of roof material." During a May 2022 storm, hail damaged the shingles on Campbell's roof. Campbell reported the damage to Great Northwest. An adjuster confirmed the damage, and Great Northwest approved removal and replacement of the shingles.

When Campbell's contractor removed the damaged shingles, the contractor discovered that the roof decking—the wooden boards to which shingles are affixed—had gaps exceeding one-fourth of an inch in some places. To comply with the shingle manufacturer's instructions and the state building code, the contractor was required to repair the gaps before installing the shingles. The contractor placed oriented-strand-board sheathing over the existing roof decking and installed the shingles on top of the sheathing.

2

Then, the contractor invoiced Great Northwest for the roof repairs, including charges for the sheathing and the contractor's overhead and profit.

Citing to the insurance policy, Great Northwest disclaimed coverage for the sheathing and the contractor's overhead and profit, and it ultimately brought a declaratory-judgment action concerning its coverage obligations. The district court determined that Minnesota Statutes section 65A.10, subdivision 1, required Great Northwest to cover the cost of the sheathing but not the contractor's overhead or profit.

We conclude that, under section 65A.10, subdivision 1, when a replacement-cost policy covers damage to shingles, and the shingles can only be replaced according to code if repairs are made to roof decking that was not damaged by the insured event, the insurer must also cover repairs to the roof decking. However, Campbell has not shown that the insurance policy violates the statute by excluding coverage for overhead and profit. We therefore affirm.

## FACTS

The facts here are undisputed. Great Northwest issued a homeowners' insurance policy to Campbell, which was in effect at the time of the hailstorm.[1] The policy included a "Roof Damage Limitation Endorsement," which states:

> With respect to the roof of [the home] "we" will only pay for direct physical loss or damage to the outer most layer of roof material . . . .
>
> There is no coverage for and "we" will not pay for tear off, repair, removal, or replacement of any layer of roofing

---

[1] Campbell's wife, Betty L. Campbell, was also named as a defendant in the district court, but she recently passed away and is not a party to this appeal.

3

material, including "decking," beneath the outermost layer. This limitation applies even if the tear off, repair, removal, or replacement of any layer of roofing material beneath the outermost layer or "decking" is necessary to repair, remove, or replace the outermost layer of roofing material. This limitation also applies even if the tear off, repair, removal, or replacement of any layer of roof material, including "decking," other than the outermost layer, is required by any law or ordinance, including any building code.

"We" do pay for direct physical loss to "decking" below all layers of roof material . . . .

. . . .

Any part of the policy in conflict with this endorsement has no effect, and shall not apply to any loss or damage to a roof of [the home].

"Decking" is defined in the endorsement as "the wood, plywood, wood fiber, or other material applied to the structure of a building or other structure and to which a roof assembly is attached" and "does not include shingles of any type or other roof surfacing material."

Following the May 2022 hailstorm, an independent insurance adjuster retained by Great Northwest inspected Campbell's home and concluded that hail had damaged the shingles on the roof. The roof decking of Campbell's home was not damaged during the hailstorm.

Great Northwest paid Campbell $9,599.22—the actual cash value of the loss minus Campbell's $1,000 deductible. The policy required Great Northwest to pay Campbell an additional amount for the replacement cost value of the loss once the repairs were complete. Great Northwest warned Campbell that, if his contractor's estimate for repairing the

4

damage was higher than Great Northwest's estimate, Campbell would be required to resolve the difference with the claims adjuster before beginning any repairs.

There is no dispute that Campbell's contractor could not install new shingles without first repairing the decking. The state building code[2] requires contractors to follow the instructions of the shingle manufacturer when installing new shingles. *See* Int'l Res. Code § R905.1 ("Roof coverings shall be applied in accordance with the applicable provisions of this section and the manufacturer's installation instructions.").[3] And the shingle manufacturer instructed that the shingles could not be installed on decking with

---

[2] For its building code, Minnesota has incorporated by reference the 2018 International Building and Residential Codes. Minn. R. 1305.0011, subp. 1 (adopting the building code), 1309.0010, subp. 1 (adopting the residential code) (2021). The term "state building code" therefore refers to the International Building Code and the International Residential Code, subject to the exceptions, amendments, and qualifications to those codes as set forth in the administrative rules. *See generally* Minn. R. chs. 1305, 1309 (2021) (amending certain provisions of the International Building and Residential Codes). Chapter 9 of the International Residential Code addresses "roof assemblies." Int'l Res. Code §§ R901 to R908 (Int'l Code Council 2018); *see also* Minn. R. 1309.0903, .0905 (amending sections R903 and R905 of the Int'l Res. Code) (2021).

[3] We note that Minn. R. 1309.0905 amends R905.1 of the International Residential Code, but the amendment is not relevant to our analysis here.

gaps exceeding one-eighth of an inch.[4]  As noted, there were gaps measuring one-fourth of an inch in Campbell's existing decking.[5]

By placing sheathing over the existing decking, the contractor was able to install the shingles according to the manufacturer's instructions and in compliance with the state building code.  Campbell did not seek Great Northwest's preapproval for the installation of the sheathing.

After the contractor submitted its invoice to Great Northwest, which included charges for installing the sheathing and for overhead and profit, Great Northwest emailed the contractor, disclaiming coverage for these items.  Great Northwest pointed out that the Roof Damage Limitation Endorsement excluded coverage for "repair . . . or replacement of any layer of roofing material, including 'decking,'" that was not directly damaged.  And Great Northwest referenced another policy provision—an exclusion for overhead-and-profit coverage—as the basis for disclaiming coverage for the contractor's overhead and profit charges.  That exclusion provides:  "Overhead and profit on the materials and labor

---

[4] The manufacturer's instructions state:

> ROOF DECKS:  Use minimum 3/8" (10mm) plywood or OSB decking as recommended by APA-The Engineered Wood Assn.  Wood decks must be well-seasoned and supported having a maximum 1/8" (3mm) spacing, using minimum nominal 1" (25mm) thick lumber, a maximum 6" (152mm) width, having adequate nail-holding capacity and a smooth surface.

[5] Great Northwest has not asserted that the contractor should have installed different shingles.

associated with roofing or the roofing system will not be covered under this policy unless the damage to the roof or roof system is a result of fire or lightning."

After Great Northwest disclaimed coverage, Campbell sent Great Northwest a letter asserting that the roof-damage endorsement and the overhead-and-profit exclusion violate Minnesota Statutes section 65A.10, subdivision 1. Great Northwest brought a declaratory-judgment action against Campbell to determine its coverage obligations, and then moved for summary judgment. The district court denied the motion in part, determining that the roof endorsement violated the statute. And the district court granted the motion in part, determining that the overhead-and-profit exclusion did not implicate the statute.

Great Northwest appeals, challenging the district court's partial denial of its motion for summary judgment. Campbell filed a notice of related appeal challenging the partial grant of summary judgment to Great Northwest.

## ISSUES

I.     Does Minnesota Statutes section 65A.10, subdivision 1, mandate coverage for repairs to roof decking that are required by the state building code before damaged shingles can be replaced?

II.     Does the overhead-and-profit exclusion in Campbell's homeowners' insurance policy violate Minnesota Statutes section 65A.10, subdivision 1?

## ANALYSIS

Appellate courts "review the grant of summary judgment de novo to determine whether there are genuine issues of material fact and whether the district court erred in its application of the law." *Montemayor v. Sebright Prods., Inc.*, 898 N.W.2d 623, 628 (Minn.

2017) (quotation omitted). Reviewing courts "view the evidence in the light most favorable to the party against whom summary judgment was granted." *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76-77 (Minn. 2002).

**I.** **Under Minnesota Statutes section 65A.10, subdivision 1, Great Northwest must cover the cost of bringing the roof decking into compliance with the state building code.**

Great Northwest argues that the Roof Damage Limitation Endorsement in Campbell's homeowners' insurance policy clearly excludes coverage for repairing the decking by installing sheathing. It further contends that the district court erred in interpreting Minnesota Statutes section 65A.10, subdivision 1, to require coverage of the sheathing notwithstanding the roof-damage endorsement.

**A.** **The Roof Damage Limitation Endorsement in Campbell's insurance policy plainly excludes coverage for the sheathing.**

We first consider whether the policy itself excludes coverage for the sheathing. An appellate court reviews de novo the "interpretation of an insurance policy and the application of the policy to the undisputed facts of a case." *Com. Bank v. W. Bend Mut. Ins. Co.*, 870 N.W.2d 770, 773 (Minn. 2015).

The roof-damage endorsement excludes coverage for "tear off, repair, removal, or replacement" of decking unless there is "direct physical loss" to the decking "below all layers of roof material." Furthermore, the roof-damage endorsement states that this limitation applies "even if the tear off, repair, removal, or replacement" of decking "is required by any law or ordinance, including any building code."

Campbell agrees that there was no direct damage to the decking of his home. But he argues that the roof-damage endorsement does not exclude coverage of the sheathing that the contractor installed over the decking. According to Campbell, the decking was not "removed" or "replaced," and the installation of the sheathing was not a "repair."

The policy does not define the terms "remove," "replace" or "repair." "An insurance policy must be construed as a whole, and unambiguous language must be given its plain and ordinary meaning." *Midwest Fam. Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013) (quotation omitted). When a term is not defined in an insurance policy, courts may rely on dictionary definitions to determine the plain and ordinary meaning of the term. *Russell v. Sentinel Ins. Co.*, 906 N.W.2d 543, 546 (Minn. App. 2018). One dictionary's definition of "repair" is "[t]o set right; remedy." *The American Heritage Dictionary of the English Language* 1488 (5th ed. 2018).

Using this definition, we conclude that the contractor's installation of sheathing constituted a repair to the decking. The contractor used sheathing to remedy the one-fourth-of-an-inch gaps in order to install new shingles in compliance with the manufacturer's instructions and the state building code. Because the installation of sheathing is a repair of the decking, and there was no "direct physical loss" to the decking "below all layers of roof material," coverage is excluded under the plain language of the roof-damage endorsement.

9

**B.**     **Notwithstanding the policy language, Minnesota law requires Great Northwest to cover the cost of the sheathing.**

Next, we address whether the district court erred in interpreting section 65A.10, subdivision 1, to require coverage for the sheathing despite the roof-damage endorsement. Section 65A.10, subdivision 1, states:

> Subject to any applicable policy limits, where an insurer offers replacement cost insurance . . . the insurance must cover the cost of replacing, rebuilding, or repairing any loss or damaged property in accordance with the minimum code as required by state or local authorities . . . .   In the case of a partial loss, unless more extensive coverage is otherwise specified in the policy, this coverage applies only to the damaged portion of the property.

The parties agree, and the record demonstrates, that the policy provides replacement-cost coverage and the state building code did not allow the replacement shingles to be installed on Campbell's existing roof decking.  And there is no dispute that the hailstorm caused a partial loss.  But Great Northwest argues that it is not required by section 65A.10, subdivision 1, to cover the cost of installing the sheathing because the decking is not "the damaged portion of the property."

The Minnesota Supreme Court recently interpreted the phrase "the damaged portion of the property" as used in section 65A.10, subdivision 1.  It determined in *St. Matthews Church of God & Christ v. State Farm Fire & Casualty Co.* that this phrase is susceptible of only one reasonable interpretation.  981 N.W.2d 760, 764 (Minn. 2022).  According to *St. Matthews*, the unambiguous statutory language means that an insurer's "obligation to bring the damaged portion of the property up to minimum code is limited to repairs

10

necessary to bring up to code that part of the property that was damaged in the insured event." *Id.* at 765.

Both Great Northwest and Campbell argue that this interpretation of section 65A.10, subdivision 1, supports their respective positions. According to Great Northwest, the decking was not part of the property that was damaged in the hailstorm—rather, only the shingles were damaged. But Campbell contends that the roof was damaged, and the decking is part of the roof.

We agree with Great Northwest that the damaged part of the property was the shingles. However, we conclude that section 65A.10, subdivision 1, as interpreted by the supreme court in *St. Matthews*, requires coverage of the sheathing. That is because, to replace the damaged shingles in accordance with the state building code, the decking had to be repaired. Thus, the sheathing was a repair to the decking that was part of the cost of replacing the damaged shingles.

In *St. Matthews*, the supreme court acknowledged that considering whether section 65A.10, subdivision 1, requires coverage is "a fact-intensive inquiry." *Id.* at 767-68. Our decision in this case is guided by contrasting the factual circumstances in *St. Matthews* with those here.

Not surprisingly for Minnesota, *St. Matthews* also involved storm damage to a building. *See id.* at 761. A wind and hailstorm damaged drywall in St. Matthews's church in St. Paul, causing a partial loss. *Id.* at 763. St. Matthews's insurance policy provided replacement cost coverage for storm damage. *Id.* at 762. The insurer approved coverage of the cost of repairing and replacing the drywall. *Id.* at 763. Once the drywall was

11

removed, it was discovered that the masonry behind the drywall was cracked. *Id.* Although the storm did not damage the masonry, the city would not issue St. Matthews a permit to replace the drywall unless repairs were also made to the masonry in order to "protect the public health, safety and welfare in all structures and on all premises" under city ordinance. *Id.* at 763, 764 n.3, 767 (quotation omitted). St. Matthews sought coverage for the masonry repair, but its insurer denied coverage. *Id.* at 763.

Before the supreme court, St. Matthews argued that the denial of coverage violated section 65A.10, subdivision 1. *Id.* at 766. St. Matthews contended that the damaged portion of the property was the wall, which included both the masonry and the drywall. *Id.* And because the city would not issue a permit authorizing repair of the drywall unless St. Matthews also repaired the masonry, denial of coverage for that repair was contrary to the statute. *Id.*

The supreme court disagreed. *Id.* at 766-67. For three reasons, it determined that the insurer was not required to cover the repair of the masonry. First, the supreme court observed that the insurer "fully covered the cost of replacing the drywall consistent with any municipal codes related to the drywall." *Id.* at 766. Second, it noted that "absent the City's requirement mandating that the masonry be brought up to code before repairing the drywall," the insurer had no "independent responsibility to pay for repairs to the masonry." *Id.* at 767. And third, the supreme court reasoned that the condition of the masonry did not prevent the installation of the drywall. *Id.* It explained that, because "the drywall itself could be completely replaced in compliance with the municipal code without making any additional changes to other parts of the property," the damaged portion of the property was

12

the drywall and not the masonry.  *Id.* at 767 n.6.  However, as to this third reason, the supreme court observed that different factual circumstances could lead to different results.

For example, it postulated,

> one could imagine a situation where a storm caused damage to a section of aluminum wiring in a house.  The insurer would be required to replace that section of aluminum wiring and, under section 65A.10, subdivision 1, if the building code required the use of copper wiring, the insurer would have to install copper wiring for the damaged section of the wiring.  A different question would arise under the rule we announce today if the building code also prohibited the installation of new wiring that resulted in a mixture of copper and aluminum wiring; that prohibition might raise a different question of whether section 65A.10, subdivision 1 would require replacement of nondamaged aluminum wiring to comply with the wiring provisions of the code.

*Id.*

Great Northwest argues that the supreme court's rationale in *St. Matthews* directly applies to the circumstances here.  It analogizes the drywall and masonry in *St. Matthews* to Campbell's shingles and decking.  And it contends that *St. Matthews* requires this court to determine that section 65A.10, subdivision 1, does not require coverage of the sheathing because the decking was not part of the damaged portion of Campbell's property, which was just shingles.

We reject Great Northwest's comparison.  Indeed, the circumstances here more closely resemble those in the supreme court's hypothetical concerning replacement of nondamaged aluminum wiring to comply with code requirements.  Although the shingles were the damaged portion of Campbell's property, it was not possible for a roofer to install new shingles in accordance with the state building code unless the decking was first

13

repaired. The state building code requires shingles to be installed pursuant to the manufacturer's instructions. And the parties agree that those instructions necessitated the repair of the decking. Thus, replacing the damaged shingles in accordance with the state building code required both repair of the decking and new shingles.

Under section 65A.10, subdivision 1, which requires replacement cost insurance to cover the cost of repairing any loss or damaged property in accordance with the minimum state or local codes, the cost of repairing the damaged shingles in accordance with the state building code included the cost of repairs to the decking required by the state building code. Accordingly, Great Northwest was required to cover the cost of the sheathing, and the district court did not err in denying Great Northwest's motion for summary judgment in part.

## II. Campbell does not satisfy his burden of showing that the district court erred by enforcing the overhead-and-profit exclusion in his homeowners' insurance policy.

Campbell argues that the district court erred in granting partial summary judgment to Great Northwest. He contends that the policy's exclusion of coverage for overhead and profit violates Minnesota Statutes section 65A.10, subdivision 1.

As noted, that exclusion in Campbell's policy precludes coverage for overhead and profit on materials and labor for roofing unless the damage was caused by fire or lightning. Of course, Campbell's roof, which was damaged by a hailstorm, was not damaged by fire or lightning. Thus, the district court concluded, the exclusion applies.

Campbell argues that the exclusion violates section 65A.10, subdivision 1. According to Campbell, the statute "requires an insurance company to cover *all* costs

14

mandated by the building codes, not some costs." He contends that "all" costs necessarily include overhead and profit.

While a grant of summary judgment is reviewed de novo, *Montemayor*, 898 N.W.2d at 628, Campbell has the burden to show that the district court erred by determining that the exclusion does not violate section 65A.10; this court will not presume error, *see Midway Ctr. Assocs. v. Midway Ctr., Inc.*, 237 N.W.2d 76, 78 (Minn. 1975) ("[T]he burden of showing error rests upon the one who relies upon it." (quotation omitted)). For several reasons, we conclude that he does not satisfy this burden. First, the plain language of section 65A.10, subdivision 1, does not contain the language "all costs." Second, Campbell does not explain how the statutory language supports his argument. And finally, Campbell provides no authority to support his argument. Because Campbell fails to show any error, we conclude that the district court did not err in enforcing the overhead-and-profit exclusion in the policy and affirm the partial grant of summary judgment to Great Northwest.

## DECISION

Although Campbell's roof decking was not damaged by the hailstorm, Minnesota Statutes section 65A.10, subdivision 1, requires Great Northwest to cover the cost of the decking repair because the damaged shingles could not be replaced according to code unless the decking was repaired. Stated otherwise, the repair to the decking was part of the cost of replacing the damaged shingles. Thus, the district court did not err in denying Great Northwest's motion for summary judgment as to its claim regarding coverage of the sheathing—which repaired the decking. Additionally, Campbell fails to show any error in

the district court's determination regarding the enforceability of the policy's overhead-and-profit exclusion.  We therefore conclude that the district court did not err in granting summary judgment to Great Northwest as to that claim.

**Affirmed.**