**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0986**

James Linn, et al.,
Appellants,

vs.

BCBSM, Inc.,
Respondent.

**Filed January 30, 2017
Reversed and remanded
Jesson, Judge**

Ramsey County District Court
File No. 62-CV-15-4022

Brandon M. Schwartz, Michael D. Schwartz, Schwartz Law Firm, Oakdale, Minnesota (for appellants)

Joel A. Mintzer, Doreen A. Mohs, BCBSM, Inc., Eagan, Minnesota (for respondent)

Considered and decided by Schellhas, Presiding Judge; Ross, Judge; and Jesson, Judge.

## S Y L L A B U S

The determination of medical necessity in an external-review process conducted under Minnesota Statutes section 62Q.73 (2016) is contractually binding on a health insurer.

## O P I N I O N

**JESSON**, Judge

In this action alleging breach of a health-plan contract, appellants James and Gloria Linn challenge the district court's summary judgment concluding that no breach occurred

as a matter of law when respondent-insurer BCBSM, Inc., paid a claim following an external-review determination that proton-beam radiation therapy was medically necessary to treat James Linn's bone cancer. They contend that the external-review determination of medical necessity binds the insurer by statute and contract and that by failing to authorize coverage earlier, the insurer breached the insured's contractual right to timely care. We conclude that because the external-review determination binds the insurer with respect to medical necessity, the district court erred by interpreting the health-plan contract with respect to that issue. We reverse and remand for further consideration of whether the insurer's failure to approve coverage when first requested constituted a breach of the timeliness provision of the contract and caused compensable damages to the insured.

**FACTS**

In January 2014, James Linn and his wife, Gloria Linn, entered into an individual health-plan contract with respondent BCBSM, Inc. (Blue Cross). The contract provides that coverage is subject to its terms, including medical necessity as defined, and that Blue Cross will not pay for services that are (a) not medically necessary or (b) related to care that is investigative.[1] It also excludes coverage for certain services, even if they may be medically necessary. And it provides that health-plan members have a right "to receive quality health care that is friendly and timely." The contract allows for a formal appeals

---

[1] A treatment is considered investigative under the contract if (a) it has not yet received required FDA marketing approval, (b) it is the subject of ongoing clinical trials, or (c) medically reasonable conclusions have not been established concerning its safety, effectiveness, or effect on health outcomes.

2

process to Blue Cross. It also refers to a statutory external-review process available to an insured under Minnesota Statutes section 62Q.73.

In March 2014, after experiencing back pain, James Linn had a magnetic-resonance-imaging scan, which revealed a tumor on his thoracic spine. He had back surgery in St. Cloud, including the insertion of hardware. The pathology report of the tumor indicated chondrosarcoma, a type of bone cancer that affects cartilage. Linn was then referred to the Mayo Clinic, where a radiation oncologist recommended additional surgery, with postoperative radiation treatment with protons or a combination of protons and photons.[2] Linn had additional back surgery in May 2014 in St. Cloud to remove as much of the tumor as possible, but radiation therapy was still recommended.

Linn's contract with Blue Cross provides that proton-beam radiation therapy "may be considered medically necessary" in several listed clinical situations, including

> [p]ostoperative therapy . . . in patients who have undergone biopsy or partial resection of chordoma or low-grade (I or II) chondrosarcoma of the basisphenoid region (skull-base chordoma or chondrosarcoma) or cervical spine and have residual localized tumor without evidence of metastasis.

Under the contract, proton-beam radiation therapy is considered investigative in other situations, including treating chondrosarcoma in the thoracic spine, the location of Linn's tumor.

A radiation oncologist in St. Cloud referred Linn to CDH Proton Center for a consultation. On September 24, 2014, Dr. William Hartsell, a radiation oncologist from

---

[2] Proton-beam radiation therapy involves using magnetic fields to direct protons, hydrogen atoms whose electrons have been removed, to a tumor.

Proton Center, provided a letter of medical necessity to Blue Cross, stating that it was medically necessary for Linn to receive a portion of his postoperative radiation treatment via proton-beam therapy to control the tumor and minimize the radiation dose to surrounding normal organs. Dr. Hartsell noted an increased risk of recurrence based on the extent of the tumor and the implanted hardware. On October 9, Blue Cross denied prior authorization for the proton-beam radiation therapy on the ground that it was experimental and/or investigational because the location of the tumor did not meet the contract's criteria for medical necessity.

In early December 2014, on Linn's behalf, Dr. Hartsell filed an internal appeal of the denial of authorization for proton-beam radiation therapy. He stated that because the required radiation dose was high, the use of conventional X-ray therapy for all of the treatment would deliver a high dose of radiation therapy to normal lung and kidney tissues, producing a high risk of long-term complications from treatment. The use of proton-beam therapy, however, would limit the effects of radiation to the kidneys, lungs, and heart.

On December 15, 2014, Linn was taken to the emergency room with severe back and abdominal pain. The next day, his neurosurgeon also wrote to Blue Cross in support of proton-beam therapy, stating that Linn's tumor had wrapped around his spinal cord, creating concern that another operation would be required to preserve leg function.

On December 18 and 19, Linn contacted Blue Cross, requesting reversal of the denial of benefits, stating that it was an emergency situation. A few days later, Linn underwent an eight-hour surgery for the tumor, and the pathology report showed chondrosarcoma. On December 29, in response to Linn's appeal, Blue Cross issued a

4

denial of benefits on the basis that proton-beam therapy was considered investigative for the treatment of a chondrosarcoma in a region other than the skull base or cervical spine. As part of the appeals process, a physician reviewer determined that there were no extenuating circumstances that would make the use of protons medically necessary in Linn's case. On December 30, Dr. Hartsell wrote again to Blue Cross, stating that the tumor could not be controlled using standard treatment alone and that if there were further recurrences, which was almost a certainty, the risk increased for "devastating neurological complications."

In February 2015, Linn requested external review of Blue Cross's decision pursuant to Minnesota Statutes section 62Q.73. The case was referred to the MAXIMUS Center for Health Dispute Resolution.[3] After review by a practicing physician who is board certified in radiation oncology and also by a licensed attorney, MAXIMUS determined that the denial of coverage would be overturned. On April 2, 2015, the external review concluded:

> The MAXIMUS physician consultant explained that [Linn] has undergone 3 surgeries and is at very high risk for recurrence. The MAXIMUS physician consultant also explained that [Linn] needs a high dose of radiation therapy for treatment of his chondrosarcoma. The MAXIMUS physician consultant indicated that treatment with intensity modulated radiation therapy alone would result in a very high dose of radiation to [Linn's] lungs and kidneys, which would result in a high risk for serious long term complications. The MAXIMUS physician consultant also indicated that the use of proton-beam therapy for a portion of [Linn's] treatment would allow for appropriate coverage of target volume and would limit the dose to his kidneys, lungs, and heart. Therefore, the MAXIMUS

---

[3] MAXIMUS is a company that contracts with the Minnesota Department of Commerce to independently review appeals made by persons challenging adverse determinations on coverage.

> physician consultant concluded that the requested proton radiation therapy is not investigational and is medically necessary for treatment of [Linn's] condition.

Blue Cross then agreed to pay for Linn's proton-beam radiation therapy.

In June 2015, the Linns sued in district court seeking damages from Blue Cross for the delay in authorizing coverage. They alleged breach of contract, intentional infliction of emotional distress, negligence, and deceptive trade practices. Blue Cross filed a rule 12 motion to dismiss, and the district court granted the motion to dismiss all claims except the contract claim.

Blue Cross then moved again to dismiss the action or, in the alternative, for summary judgment. The Linns also moved for summary judgment. After a hearing, the district court granted Blue Cross's motion for summary judgment and denied the Linns' motion for summary judgment. The district court concluded that, as a matter of law, Blue Cross did not breach its contract with the Linns because the health-plan contract did not cover proton-beam radiation therapy for chondrosarcomas of the thoracic spine as medically necessary. It also ruled that Blue Cross did not improperly interfere with or cause delay in the internal appeal process. And it concluded that, in any event, no breach occurred because Blue Cross ultimately paid the claim. This appeal follows.

**ISSUE**

Did the district court err by interpreting medical necessity under the terms of a health-plan contract after an external reviewer had made a binding determination on that issue?

**ANALYSIS**

Summary judgment is proper if, based on the entire record before the court, there are no genuine issues of material fact and a party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03. "We review a district court's grant of summary judgment de novo to determine whether any genuine issue of material fact exists and whether the district court erred in applying the law." *Larson v. Nw. Mut. Life Ins. Co.*, 855 N.W.2d 293, 299 (Minn. 2014).

The Linns argue that the district court erred by granting summary judgment to Blue Cross because the external-review determination of medical necessity was binding on Blue Cross and because Blue Cross breached the timeliness provision of the contract by failing to pay for proton-beam radiation therapy when it was originally requested. In the alternative, they argue that, under the terms of the contract, proton-beam radiation therapy was medically necessary to treat Linn's tumor. Blue Cross argues that the therapy was not medically necessary under the contract, that the results of the external-review process are not binding on the contractual issue of medical necessity, and that it did not breach the contract because it paid for the therapy when it was determined to be medically necessary on external review.

The primary issue before us is whether an external reviewer's medical-necessity determination not only requires a health-plan company to pay for the treatment requested, but also binds the company on the contract term of medical necessity. Stated another way, we must examine whether the reviewer's medical-necessity determination is superimposed on the contract definition of medical necessity, based on the legislature's

7

provision that it shall be binding on the health-plan company. *See* Minn. Stat. § 62Q.73, subd. 8 (2016) (stating that the external-review decision is "binding" on the health-plan company).

To address this issue, we first examine the background of the external-review process and its application in Minnesota statutory law. We then analyze the effect of the external-review determination on the medical-necessity provision in the health-plan contract. Finally, we address the implications of our conclusion for further proceedings in this case to address the issues of timeliness and damages.

### *Background of expert-review process and its application in Minnesota*

Since the creation of the Blue Cross system during the Great Depression, insured individuals have been generally able to choose among any participating hospital and physician group to meet their healthcare needs.[4] *See generally*, Paul Starr, *The Social Transformation of American Medicine*, at 237-43, 306-10 (1982). The backbone of this insurance system was a "fee-for-service" design. Providers would prescribe a treatment, deliver the care, and then submit the bill to the insurance company. *See* Aaron Seth Kesselheim, *What's the Appeal? Trying to Control Managed Care Medical Necessity Decisionmaking Through a System of External Appeals*, 149 U. Pa. L. Rev. 873, 878-79 (2001). While insurers would examine the medical necessity of the treatment, this typically

---

[4] During the 1930s, most subscribers were individuals, but following gains in the labor movement and wage controls imposed during World War II, group insurance became the prevalent mechanism for private insurance. *Starr*, at 310-14; Laura D. Hermer, *Private Health Insurance in the United States: A Proposal for a More Functional System*, 6 Hous. J. Health L. & Pol'y 1, 10 (2005).

occurred only after treatment completion. And deference to physician judgment resulted in few payment denials. *Id*.

The financial incentives of the fee-for-service system led to overutilization of medical resources, which was a primary driver of increased medical costs. *Id*. at 879-80. By the early 1980s, healthcare costs spiraled. In response to these rising costs, systems of "managed care" rapidly came to replace pure fee-for-service medicine in the late 1980s. *Id*. One of the attributes of managed care is the attempt to control costs through techniques such as bonuses, incentives, "gatekeepers," utilization review and preauthorization requirements. Hermer, *supra*, at 24-25.

By the mid-1990s, healthcare-cost increases had slowed dramatically. *Id.* at 15. But insurance companies and HMOs that utilized managed-care techniques to control physician decision-making faced a backlash from patients, providers, and legislators. Much of this reaction focused on preauthorization requirements by insurance companies, which merged what was once solely the decision of the treating physician with the decision of the health insurer about whether to pay for the requested care. Nan D. Hunter, *Managed Process, Due Care: Structures of Accountability in Health Care*, 6 Yale J. Health Pol'y, L. & Ethics 93, 93 (2006).

In response to the growing reality of preauthorization, legislatures in at least 41 states and the District of Columbia enacted laws that establish external-review systems. *Id*. Through external review, a patient may challenge a denial of coverage and, if successful, will be entitled to an order directing the health plan to provide, or, in a retrospective case, to pay for, the treatment that was initially denied. *Id*. at 136.

In 1999, Minnesota created its external-review process, which is governed by Minnesota Statutes section 62Q.73. *See* 1999 Minn. Laws ch. 239, § 39, at 1897-99. That statute provides that a patient who has received an adverse determination from a health plan has the right to submit a written request for an external review. Minn. Stat. § 62Q.73, subds. 1, 3. In that process, an independent organization considers information submitted by both the patient and the health insurer. It then issues a decision, which is binding on the health-plan company, but not binding on the patient. *Id.*, subds. 4-8.

Submission to this external-review process is required for Blue Cross based on its licensure as a nonprofit health-service-plan corporation under Minnesota Statutes chapter 62C. Concurrently the statutory scheme governing licensed nonprofit health-service plans, such as Blue Cross, provides the definition of medical necessity used on external review. *See* Minn. Stat. § 62Q.53, subd. 2.[5] Specifically, the medical-necessity determination requires that expert review "must determine whether the adverse determination was consistent with the definition of medically necessary care in section 62Q.53, subdivision 2." Minn. Stat. § 62Q.73, subd. 7(c).

This definition of medically necessary care applies to Blue Cross because of its licensure as a nonprofit health-service plan corporation apart from the realm of external-review decisions, and it also sets the standard used on external review. *See* Minn. Stat.

---

[5] The statutory definition of medically necessary care in section 62Q.53 applies on external review following an adverse determination "by a health plan company, other than a health plan company licensed under chapter 62D." Minn. Stat. § 62Q.73, subd. 7(c). Blue Cross is licensed under Minnesota Statutes chapter 62C, not chapter 62D. *State by Humphrey v. Philip Morris*, 551 N.W.2d 490, 492 (Minn. 1996).

10

§ 62Q.53.[6] The statute defines "medically necessary care" as "health care services appropriate, in terms of type, frequency, level, setting, and duration, to the enrollee's diagnosis or condition, and diagnostic testing and preventive services." *Id.*, at 2. It further provides that "[m]edically necessary care must be consistent with generally accepted practice parameters as determined by healthcare providers in the same or similar general specialty as typically manages the condition, procedure, or treatment at issue." *Id.* Such care must either help or restore the insured's health or prevent deterioration of the insured's condition. *Id.* Thus, by statute, when the external-review process was initiated, the external-review entity was required to evaluate medical necessity under the standards of section 62Q.53, subdivision 2, which already applied to Blue Cross due to its licensure as a nonprofit health-service plan corporation. *See id.*; *see also* Minn. Stat. § 62C.01, subd. 3. And that external-review decision on medical necessity is binding on the health plan, but not binding on the enrollee. Minn. Stat. § 62Q.73, subd. 8.

> ### *The external-review decision on medical necessity supersedes the definition of medical necessity in the parties' health-plan contract.*

Blue Cross argues that the external-review decision is irrelevant to whether Blue Cross's initial denial of coverage complied with the definition of medical necessity in the health-plan contract, which is at issue in this action. It contends that the external-review decision is binding only as to payment, not as to the contract definition of medical

---

[6] Although the definition of "medically necessary care" in Minnesota Statutes section 62Q.53, subdivision 2, applies by its terms to health plans that cover mental-health services, at oral argument Blue Cross did not dispute that, under its licensure, the health plan sold to the Linns requires coverage of services that satisfy this definition of medical necessity.

11

necessity. We disagree. The plain language of the external-review statute does not limit the binding nature of the external-review determination on the health-plan company to the payment of claims that have been submitted for external review. *See* Minn. Stat. § 62Q.73. Further, even if the term "binding" is ambiguous, legislative intent supports the interpretation that it also encompasses the determination of medical necessity in the parties' contract. Finally, as discussed below, this interpretation is consistent with the United States Supreme Court decision in *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 387, 122 S. Ct. 2151, 2170-71 (2001).

The interpretation of a statute presents a question of law, which appellate courts review de novo. *Wayzata Nissan, LLC v. Nissan N. Am., Inc.*, 875 N.W.2d 279, 284 (Minn. 2016). The object of statutory interpretation is to ascertain legislative intent. Minn. Stat. § 645.16 (2016). When the intent of the legislature is clear from a statute's plain and unambiguous language, we interpret the statute according to its plain meaning and do not resort to other principles of statutory interpretation. *Binkley v. Allina Health Sys.*, 877 N.W.2d 547, 550 (Minn. 2016). Plain meaning assumes the ordinary usage of words that are not statutorily defined and draws from the full-act context of the provision. *Occhino v. Grover*, 640 N.W.2d 357, 359 (Minn. App. 2002), *review denied* (Minn. May 28, 2002). If the statute is ambiguous, meaning that it is susceptible to more than one interpretation, we may look beyond statutory language to discern legislative intent. *Staab v. Diocese of St. Cloud*, 813 N.W.2d 68, 73 (Minn. 2012). Legislative intent includes such matters as the necessity and occasion for the law and the consequences of a particular interpretation. Minn. Stat. § 645.16 (1), (6).

Minnesota Statutes section 62Q.73, subdivision 8, plainly provides that "[a] decision rendered [on external review] shall be nonbinding on the enrollee and binding on the health plan company."[7] In common usage, "binding" means "imposing or commanding adherence to a commitment, an obligation, or a duty." *The American Heritage Dictionary of the English Language* 187-88 (3d ed. 1992); *see also Black's Law Dictionary* 200 (10th ed. 2014) (stating that "[to] bind" means "[t]o impose one or more legal duties"); *see also Barovic v. Pemberton*, 114 P.3d 1230, 1233 (Wash. Ct. App. 2005) (defining binding as "requiring submission, conformity, or obedience" (quotation omitted)). Therefore, under the plain language of the statute, Blue Cross was required to abide by and to adhere to the external-review decision determining that proton-beam radiation therapy was medically necessary to treat Linn's condition.

Blue Cross' argument that the external-review decision was binding only as to payment of the claim submitted, not as to the contract definition of medical necessity, asks this court to add caveats to the term "binding." But binding means binding. One of the basic canons of statutory interpretation provides that courts "do not add words or phrases to an unambiguous statute." *County of Dakota v. Cameron*, 839 N.W.2d 700, 709 (Minn. 2013). We will not do so here. The legislature had the ability to limit the term "binding" only to the obligation to pay claims after the external-review decision, and if it had so

---

[7] The statute also provides that "[t]he health plan company may seek judicial review of the decision on the grounds that the decision was arbitrary and capricious or involved an abuse of discretion." Minn. Stat. § 62Q.73, subd. 8. But Blue Cross has not challenged the expert-review determination on that ground. *See Melina v. Chaplin*, 327 N.W.2d 19, 20 (Minn. 1982) (supporting proposition that issues not briefed are forfeited).

decided, it would have included such a limitation. *Cf. Annandale Advocate v. City of Annandale*, 435 N.W.2d 24, 30 (Minn. 1989) (stating that the "legislature knew how to incorporate a specific reference to cities and other local government bodies in the Open Meeting Law . . . [and] if the legislature had wanted to exempt city governments from the [law], it would have so indicated"). In fact, here, the legislature did differentiate when considering the binding nature of the external-review decision: it made that decision binding only on the health plan, not on the enrollee. Further qualification of the binding nature of the external-review decision on medical necessity is for the legislature to plainly state, not for this court to extrapolate.

The full-act context of the statutory provision reinforces that there are not implied caveats to the binding nature of the external reviewer's medical-necessity determination. By its licensure as a nonprofit health-plan corporation, Blue Cross is already bound to cover the medically necessary services as defined by section 62Q.53, subdivision 2. This broad application of the medical-necessity definition to licensed nonprofit health plans like Blue Cross, outside of the realm of external review, reinforces the plain language of the statute: that the external reviewer's medical-necessity decision is not simply a payment decision.[8]

Even assuming that the word "binding" is ambiguous, legislative intent supports the interpretation that the term "binding" also encompasses the determination of medical

---

[8] We note that Blue Cross is not precluded from providing a health-plan contract that includes coverage incorporating a more expansive standard for medical necessity than that indicated by Minnesota Statutes section 62Q.53, subdivision 2. In other words, that statute designates a floor, not a ceiling, for the coverage of medically necessary care in a health-plan contract. *See id.*

14

necessity in the parties' contract. Blue Cross is licensed as a nonprofit health-service-plan corporation under Minnesota Statutes chapter 62C. *See* Minn. Stat. §§ 62C.01-23 (2016). That chapter states as a purpose "to promote a wider, more economical and timely availability of hospital, medical-surgical, dental, and other health services for the people of Minnesota." Minn. Stat. § 62C.01, subd. 2. It is consistent with this purpose to conclude that a determination of medical necessity on external review binds a healthcare company, not just on the issue of payment of a claim, but also on the issue of medical necessity under the health-plan contract. Conversely, we note that public policy supports the insured's ability to seek legal redress following an adverse determination on external review. The health-plan contract, as an insurance policy, is generally interpreted in favor of the insured. *Am. Family Ins. Co. v. Walser*, 628 N.W.2d 605, 609 (Minn. 2001). And "[o]ne major mitigating factor for all of the due-process deficiencies in external review systems is that, as a general matter, patients can subsequently bring suit against the health plan for injuries caused by the denial of treatment." Hunter, *supra*, at 137.[9]

---

[9] Different states have different governing provisions on the effect of external review on the insured's ability to maintain a subsequent lawsuit if an insured does not prevail on external review. Hunter, *supra*, at 137. In some states, the plaintiff must first pursue external review before litigation; in others, the outcome of the external-review process creates a rebuttable presumption in a later lawsuit. *See generally id*. Minnesota, along with some other states, allows for further appeal of the external-review decision. *Id*. (citing Minn. Stat. § 62Q.73, subd. 8; Alaska Stat. § 21.07.050(d)(8) (2004); Del. Code Ann. tit. 18, § 332 (1999); Mich. Comp. Laws Ann. § 550.1915(1) (2002); N.M. Stat. Ann. § 59A-4-20 (2002); 40 Pa. Cons. Stat. Ann. § 991.2162(c)(5) (2005); R.I. Gen. Laws § 23.17.12-10(b)(6) (2001)). In states where the external-review decision is statutorily binding on both the health plan and the insured, courts have interpreted the term "binding" in different ways. *See Alexandra H. v. Oxford Health Ins. Inc.*, 833 F.3d 1299, 1308-1314-15 (11th Cir. 2016) (concluding that, despite a New York statute stating that external review was "binding on the plan and the insured," additional statutory language stating that

Our interpretation is also supported by the United States Supreme Court's decision in *Moran*, 536 U.S. 355, 122 S. Ct. 2151. *Moran* involved the issue of whether the Employment Retirement Income Security Act of 1974 (ERISA) preempted an Illinois health-maintenance organization act, which, like the relevant Minnesota statute, provides for independent review of an HMO's denial of service under a health-plan contract. *Id*. at 359, 122 S. Ct. at 2156. The Supreme Court concluded that, because the Illinois statute regulates insurance under ERISA's savings clause, it was not preempted by federal law. *Id*. at 378-80, 122 S. Ct. at 2165-67.

In so doing, the Supreme Court stated that the Illinois law's independent-review requirement "affects the 'policy relationship' between the HMO and covered persons by translating the relationship under the HMO agreement into concrete terms of specific obligation or freedom from duty." *Id*. at 373, 122 S. Ct. at 2163. Thus, it read the state law to "provid[e] a legal right to the insured, enforceable against the HMO, to obtain an authoritative determination of the HMO's medical obligations." *Id*. at 374, 122 S. Ct. at 2164. The Supreme Court in *Moran* also noted that although the relief in that case ultimately available would be controlled by ERISA authorization, "the reviewer's

the external appeal shall "be admissible in any court proceeding" indicated an intent that the insured be allowed to challenge the external-review decision in district court); *cf*. *Gjerde v. UnitedhealthCare Plan*, 859 N.W.2d 672, No. 13-1624, at *6-7 (Iowa Ct. App. 2014) (holding, when applicable statute provided that independent-review board's findings were "conclusive and binding," district court did not err in affirming the review decision denying treatment).

16

determination would presumably replace that of the HMO as to what is 'medically necessary' under this contract."[10] *Id.* at 380, 122 S. Ct. at 2167.

The Supreme Court noted that the review process "does not resemble either contract interpretation or evidentiary litigation before a neutral arbiter, as much as it looks like a practice (having nothing to do with arbitration) of obtaining another medical opinion," so that the state law "is seen as something akin to a mandate for second-opinion practice in order to ensure sound medical judgments." *Id.* at 383-84, 122 S. Ct. at 2169. Thus, in *Moran*, the Supreme Court intimated that the right to independent review of a medical-necessity determination under a state statute essentially equates to the right to a conclusive determination of the HMO's medical obligation, and that an expert-review determination of medical necessity is dispositive of the insurer's obligation with respect to the asserted claim on that issue.

The Supreme Court's observations in *Moran* inform our analysis here. In this case, by statute, the results of the external review as to the medical necessity of the proton-beam radiation therapy are binding on Blue Cross. *See* Minn. Stat. § 62Q.73, subd. 8. As a part of this process, the external-review determination "replace[s] that of the [health-plan company] as to what is 'medically necessary' under [the] contract." *Moran*, 536 N.W.2d

---

[10] The Supreme Court also stated that "[t]he parties do not dispute that [the Illinois statute], as a matter of state law, purports to make the independent reviewer's judgment dispositive as to what is 'medically necessary.' We accept this interpretation of the meaning of the statute for the purposes of our opinion." *Id.* at 380 n.9, 122 S. Ct. at 2167 n.9. We note that the Illinois statute, unlike Minnesota Statutes section 62Q.73, subdivision 8, does not contain a provision on the effect of the independent-review decision on an insured's right to maintain a lawsuit. *See* 215 Ill. Comp. Stat. 125/4-10 (2016).

at 380, 122 S. Ct. at 2167. Without question, this is a complex area of the law. However, we conclude that the district court erred by addressing on summary judgment whether proton-beam radiation therapy was "medically necessary" under the health-plan contract. Once the external-review entity determined that proton-beam therapy was medically necessary to treat Linn's condition, Blue Cross was required to adhere to that decision both as a matter of payment and a matter of contract. No further contractual analysis of that issue is warranted.[11]

The external-review statute sets forth the definition of medically necessary care used in the external-review process. *See* Minn. Stat. § 62Q.73, subd. 7(c). Blue Cross's licensure and Minnesota Statutes section 62Q.73, subdivision 8, bind Blue Cross to the results of that process. Thus, the external-review determination of medical necessity is binding on Blue Cross with respect to Blue Cross's contract with the Linns as well.

### *The Linns' additional breach-of-contract claim relating to timeliness must be addressed by the district court.*

This conclusion, however, does not end our inquiry. The district court ruled that even if the requested therapy is medically necessary, Blue Cross did not breach the health-plan contract because it ultimately paid Linn's claim. The Linns argue, however, that Blue Cross breached the contract term that requires it to provide timely care because it failed to

---

[11] This conclusion is also consistent with the provision in the Blue Cross contract itself referring to the external-review process. That provision notifies enrollees of their right to an external review of a medical determination, describes the process, and concludes: "The external review entity's decision is binding on Blue Cross, but not binding on you." Nowhere in this contract provision does Blue Cross make the distinction it argues on appeal: that the external-review decision was binding on Blue Cross only with respect to the outcome—that Blue Cross pay for the treatment—but not as to contract interpretation.

provide medically necessary services when they were originally requested, in September 2014. That term provides that the insured "ha[s] the right as a health plan member to . . . receive quality health care that is friendly *and timely*." (Emphasis added.)

The district court concluded that the external-review decision on medical necessity did not suggest that Blue Cross improperly applied the healthcare contract or was dilatory in authorizing that therapy.[12] In this respect, the district court's order did not fully address the Linns' additional timeliness argument: that Blue Cross's initial failure to approve coverage for proton-beam radiation therapy breached the health-insurance contract and caused damages. Insurance policies are contracts, and absent contrary statutory provisions, principles of contract law apply to their interpretation. *Remodeling Dimensions, Inc. v. Integrity Mut. Ins. Co.*, 819 N.W.2d 602, 611 (Minn. 2012). An insurance policy is read as a whole, with policy provisions "read in context with all other relevant provisions." *Commerce Bank v. West Bend Mut. Ins. Co.*, 870 N.W.2d 770, 773 (Minn. 2015). When contract language is ambiguous, summary judgment is inappropriate, and contract interpretation becomes a question of fact for a jury. *Hickman v. SAFECO Ins. Co. of Am.*, 695 N.W.2d 365, 369 (Minn. 2005).

Here, the contractual provision on the insured's right to receive timely care appears relevant and material to the interpretation of the parties' healthcare contract as a whole.

---

[12] The district court also rejected the Linns' argument that Blue Cross' appeal process was handled in an untimely manner. On appeal, the Linns have not challenged the district court's conclusion that Blue Cross properly adhered to its contractual appeal timeline in responding to their claim. *See Melina*, 329 N.W.2d at 20.

*See Commerce Bank*, 870 N.W.2d at 773.[13] We acknowledge that the main focus of the parties' arguments before the district court concerned the issue of whether proton-beam radiation therapy for Linn's condition falls within the definition of medical necessity in the parties' contract—an issue that, based on our ruling in this opinion, has now been resolved. Therefore, a remand to the district court is appropriate for further examination of the issue of whether Blue Cross may have breached the healthcare contract by failing to approve coverage for proton-beam radiation therapy to treat Linn's tumor when that therapy was originally requested. To the extent that a threshold legal question exists on this issue, the district court on remand is encouraged to entertain additional briefing. Otherwise, because the contract is ambiguous on the issue of timeliness, the matter would be appropriately submitted for trial on the factual issue of breach. *See Hickman*, 695 N.W.2d at 369.

### *The scope of available damages in this action is properly addressed by the district court.*

Blue Cross also argues that, even if the issue of breach is decided favorably to the Linns, no recovery of consequential damages is available for delay in payment of benefits of a validly disputed amount under a contract. *Cf. Olson v. Rugloski*, 277 N.W.2d 385,

---

[13] Blue Cross maintains that this argument on timeliness was not presented to the district court, and therefore this court should not address it. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating that this court does not generally address an issue not presented to and considered by the district court). Although the parties' written submissions to the district court did not raise this theory, the record reflects that the Linns adequately raised it at the summary-judgment hearing before the district court. The transcript of those proceedings forms part of the record before this court. *See* Minn. R. Civ. App. P. 110.01 (stating that the record on appeal consists of documents filed in the district court, exhibits, and the transcript of the proceedings). We note, however, that the district court did not have the opportunity to address this matter with the benefit of full briefing.

387-88 (Minn. 1979) (stating that "[w]hen the insurer refuses to pay or unreasonably delays payment of *an undisputed amount*, it breaches the contract and is liable for the loss that naturally and proximately flows from the breach" (emphasis added)). And Blue Cross maintains that, even if consequential damages may be recoverable, damages asserted for pain and suffering are unavailable in this breach-of-contract action. *See Glorvigen v. Cirrus Design Corp.*, 816 N.W.2d 572, 584 (Minn. 2012) (stating that a party is not responsible for tort damages for breach of a contractual duty). The Linns argue that this argument is not properly before us because Blue Cross did not raise it before the district court. *See Thiele*, 425 N.W.2d at 582.

We note that the district court did not address the scope-of-damages issue in its summary-judgment order. In its order denying Blue Cross's earlier motion to dismiss the breach-of-contract claim, the district court concluded that its dismissal of the Linns' additional claims supported Blue Cross's argument regarding "extra-contractual damages such as emotional distress or pain and suffering," but that consequential damages appear to be an appropriate category of damages with respect to the breach-of-contract claim.

Under the Minnesota Rules of Civil Appellate Procedure, the scope of review in an appeal from a final judgment extends to any order "involving the merits or affecting the judgment." Minn. R. Civ. App. P. 103.04. But an order denying a motion to dismiss for failure to state a claim does not involve the merits or affect the judgment in a case: "It does nothing more than retain the action for trial." *Indep. Sch. Dist. No. 84 v. Rittmiller*, 235 Minn. 556, 557, 51 N.W.2d 664, 664 (1952). Therefore, the district court's statements relating to available damages in its order denying dismissal of the contract action do not

21

place that issue before this court on appeal. *See id*. On remand, the district court may address this issue as appropriate in considering the issue of breach of the healthcare contract based on timeliness.

## D E C I S I O N

Because the determination of medical necessity in the external-review process is binding on the parties through their health-insurance contract, the district court erred by granting summary judgment to Blue Cross based on its conclusion that proton-beam radiation therapy was not medically necessary under the contract. Because the district court did not fully address the issue of whether the failure to cover proton-beam therapy when first requested amounted to a breach of the timeliness portion of the contract, the district court erred by concluding that Blue Cross's ultimate payment of the claim warranted summary judgment. We therefore reverse and remand for the district court to address the issue of breach as it relates to timeliness, as well as the scope of damages available on any recovery.

**Reversed and remanded.**